(No. 18696.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. E. DUNHAM, Plaintiff in Error.

*Opinion filed April 20, 1929.*

L. T. GRAHAM, (WILL F. COSTIGAN, and JOSEPH DE-
PEW, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, EDWIN
JOHNSTON, State's Attorney, and MERRILL F. WEHIM-
HOFF, for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, A. E. Dunham, in the circuit court
of Pike county, was found guilty upon the third count of
an indictment charging him with passing a forged check
knowing the same to have been forged. He was sentenced
to the penitentiary and has prosecuted a writ of error to
review the judgment.

The first two counts of the indictment charged the
forgery of the check, and the third count charged the pass-
ing of the forged check knowing it to have been forged.

Plaintiff in error lived near New Salem, in Pike county.
He owned thirteen shares of stock in the New Salem State
Bank and had a checking account in that bank. A year or
so prior to the incident in question he opened a checking
account in the Griggsville National Bank, located nine miles
east of New Salem. The check in question was dated May
26, 1927, and was drawn upon the New Salem State Bank
for $2262.24, payable to plaintiff in error, purported to be

signed by James Hall and was indorsed on the back with the name of plaintiff in error. It was sent by mail from New Salem to the Griggsville National Bank and deposited to the account of plaintiff in error and a few days later the money was paid out by check or checks purporting to have been signed by him. After the check was deposited it was cleared through banks in St. Louis, and finally reached the New Salem State Bank about June 3, 1927. This bank closed its doors four days later.

For the purpose of proving guilty knowledge the People offered evidence as to four similar checks, together with their deposit. The first one was dated March 11, 1927, and was drawn on the New Salem State Bank for $1954.07, payable to and indorsed by plaintiff in error and purported to be signed by Charles Seybold. The second was dated June 7, 1927, was for $1045, payable to plaintiff in error and purported to be signed by Alpha Johnson. The third was dated June 2, 1927, for $2053.81, payable to plaintiff in error and purported to be signed by C. A. Dean. The fourth was for $2401 and purported to be signed by R. J. Dunham. Each check was deposited in the same manner as the Hall check. The court later struck out the evidence with reference to the Johnson check. The Seybold check was admitted in evidence. The evidence showed that two of the other checks were in the hands of plaintiff in error. A motion was made by the People for an order directing plaintiff in error to produce these checks, but the court refused to enter the order on the ground that it would require plaintiff to produce evidence against himself.

James Hall testified that in 1927 he had an account in the New Salem State Bank but did not have as much as $1000 on deposit at any one time; that he had no business transactions with plaintiff in error in May, 1927, or at any other time; that he never gave him a check for any amount; that he did not give him the check in controversy; that he did not owe him anything, and that he did not know any-

thing about this check until after the New Salem State Bank was closed. Seybold testified that he did not sign the check for $1954.07 introduced in evidence; that he had seen plaintiff in error write, and in his judgment the in-indorsements on the back of the .check purported to be signed by him and on the Hall check were in the hand-writing of plaintiff in error. John Felmley, cashier of the Griggsville National Bank, testified that the Hall check came to the bank in an envelope mailed at New Salem but he did not know who mailed it; that he thought there was a letter in the envelope. Later he testified that he had searched for the letter but could not find it; that when the check arrived he deposited it to the account of plaintiff in error; that in his judgment the indorsement on the back of the check was in the handwriting of plaintiff in error, but later he expressed some uncertainty about it. He tes-tified that the Hall check was not all in the same handwrit-ing; that plaintiff in error was not in Griggsville at the time the check was deposited; that he could not tell how many checks were used in drawing out this money, and that he thought they were drawn by plaintiff in error but could not swear to it. Alpha Johnson testified that he did not sign the check bearing his name; that the indorsement on the back of that check, in his opinion, was not in the handwriting of plaintiff in error, and that the back and front of the check were in the same disguised handwriting. The Hall check and the Seybold check were admitted in evidence, together with thirteen other checks in the hand-writing of plaintiff in error and signed by him, which were admitted for the purpose of comparison. All of these checks except the Seybold check have been certified to this court for inspection.

Five bank cashiers testified, in substance, that the in-dorsement on the back of the Hall check was not made by the same person who wrote the thirteen checks admitted to be genuine; that in their opinion the body of the Hall check

and the indorsement thereon were made by the same person. Three other witnesses, including plaintiff in error, testified that the indorsement on the Hall check was not in the handwriting of plaintiff in error.

Plaintiff in error testified that he first saw the Hall check after the New Salem State Bank was in charge of the receiver; that he did not write the Hall check, indorse it, send it to the Griggsville National Bank for deposit or draw any checks against it. He testified to the same effect as to the R. J. Dunham and Seybold checks. He testified that from March to June, 1927, he paid no attention to his bank account, and he did not think he had very much on deposit. On cross-examination he denied any knowledge of depositing $138,000 from May 1 to June 6, and that his pass-book showed no such deposits. He denied making several specific deposits about which he was asked, and stated that he did not know any such deposits were made; that he never saw his bank balance-sheet until the bank was closed, and that his pass-book was balanced the last time in 1925.

It is insisted by plaintiff in error that the evidence does not establish his guilt beyond a reasonable doubt. The judgment will have to be reversed on account of errors committed, and we refrain from expressing any opinion as to the weight of the evidence. The evidence as to the signature of plaintiff in error on the back of the Hall check is in conflict, and the greater number of witnesses testified that it was not the signature of plaintiff in error. It was therefore of the utmost importance that the record should be reasonably free from substantial and prejudicial error. *People* v. *Garines,* 314 Ill. 413; *People* v. *Simmons,* 274 id. 528.

The indictment was returned on November 19, 1927, plaintiff in error was furnished with a copy on November 21, 1927, and the case was set for trial for November 28, 1927. On November 23, 1927, plaintiff in error

made a motion for a continuance, which was supported by an affidavit showing that he had engaged an attorney and was not able to retain other counsel; that the attorney was then engaged in the trial of a case and could give no time to the case of plaintiff in error prior to November 23, at which time the attorney had a case set for trial in the Federal court; that the attorney had been employed in these other cases prior to his employment by plaintiff in error; that the attorney had other cases which were to be set for trial at that term of court and he could not properly prepare this case for trial; that in order to secure a fair trial it was necessary to make an investigation and procure evidence which plaintiff in error could not procure without the assistance of his attorney; that the Hall check was in the possession of the State's attorney and had never been seen by plaintiff in error; that it was necessary to his defense that he see the check and have other prospective witnesses examine it and compare it with his genuine signature; that the names of thirty-six witnesses appeared on the back of the indictment; that they lived in various parts of the county and he desired a reasonable opportunity to interview them; that his attorney had no reasonable opportunity to ascertain the facts, interview the witnesses, examine the law and prepare the case for trial in so short a time. He asked that the case be continued until the next term of court. The motion was overruled, and this ruling is assigned as error.

No person accused of a serious crime should be forced to trial without a reasonable opportunity to employ counsel and properly prepare his defense. (*People* v. *Singer,* 288 Ill. 113.) Upon a proper showing that for want of time counsel has not been able to properly prepare the case, or that witnesses are not in attendance who might be found on time being given, or that the cause is not ready for trial for want of opportunity for preparation owing to no fault of the accused, the court, in the exercise of a wise discretion, should postpone the trial to a later day in the term

or continue the cause, if necessary. (*Dacey* v. *People,* 116 Ill. 555; *North* v. *People,* 139 id. 81.) The charge against plaintiff in error was a felony. It involved not only the check in question but involved accounts in at least two banks. Many witnesses were indorsed on the back of the indictment. Plaintiff in error did not know how many of them would be used. He denied all knowledge of the transaction or that he had even seen the check upon which it was based. The court was in error in forcing him to trial within a week of his arraignment, and the case should either have been passed to a later day in the term or it should have been continued for the term.

On direct examination plaintiff in error testified that he was in the army during the war. On cross-examination the State's attorney asked him whether he was drafted, and objection to the question was sustained. He was then asked this question: "Did you not claim that you having been a married man between the fifth of May, 1917, and the first of January, 1918, claiming that you were exempt from service in the army, did you not file such an exemption, did you not claim it before the board, and did I not appeal the case to the board at Springfield?" An objection was sustained to this question. All of this evidence was immaterial.

Complaint is made of the sixth and seventh instructions on behalf of the People, but there is no merit in these objections.

Complaint is also made of the 13th, 15th, 16th, 17th, 19th and 20th instructions. None of these instructions are accurate. They all refer to the check testified to by the witnesses, or the check mentioned in the evidence, or the check testified to as true and genuine, or the check introduced in evidence in this case. There were fifteen checks introduced in evidence, two of which were alleged to have been forged. Plaintiff in error was on trial for forging and passing the Hall check. The other checks were ad-

mitted merely to show other transactions or the genuine signature of plaintiff in error. None of these instructions specifically refer to the Hall check, but they are loosely drawn and may include and refer to any check in evidence.

Complaint is made that the court was in error in admitting evidence of similar transactions. In prosecutions for forgery and for uttering forged paper it is well established that evidence is admissible that the defendant about the same time had in his possession, or uttered or attempted to utter, other forged instruments of the same description, as tending to prove guilty intent and knowledge in the making or uttering of the particular instrument charged to have been forged or uttered. The evidence of other forgeries is not admissible and cannot be considered for the purpose of establishing the act of forging or uttering the instrument charged in the indictment, but where the fact of the false making or uttering a forged instrument has been shown, evidence of collateral forgeries or uttering of forged instruments of like description is admissible as tending to show the intent with which the false making was done or the guilty knowledge of the defendant in uttering the instrument named in the indictment. (*People* v. *Vammar,* 320 Ill. 287; *People* v. *Dougherty,* 266 id. 420; *Anson* v. *People,* 148 id. 494.) There was no error in admitting evidence of similar transactions.

For the errors indicated the judgment will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*