THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES PARK, Defendant-Appellant.

Third District No. 77-463

Opinion filed February 7, 1980.

STOUDER, P. J., dissenting.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin, Barbara A. Preiner, and Phyllis J. Perko, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant James Park was tried by a jury in the Circuit Court of Fulton County and was found guilty of unlawful delivery of cannabis in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 705(d)). He was sentenced to three years probation conditioned upon his serving 30 days in the county jail. On appeal defendant contends (1) that he was denied due process of law by a pre-indictment delay, and (2) that the trial court erred in denying his motion for a continuance.

On July 27, 1977, defendant was indicted for delivering cannabis on September 21, 1976, some 10 months earlier. Prior to trial defendant's motion to dismiss for pre-indictment delay and his motion for a continuance for more time to locate witnesses were both heard and denied. At trial Craig Salmon, a special agent for the Multi-County Drug Enforcement Group (MEG), testified that on September 21, 1976, he received a phone call from an informant who put him in touch with another person. Salmon asked that person to save two bags of marijuana for sale to him. Salmon then drove from his office in Peoria to Canton. He met the informant, who took him to a room in Aljeray dorm where he met defendant. After identifying himself as the person Salmon had spoken to over the phone, defendant then handed two bags of marijuana to Salmon. The only persons present were Salmon, defendant, and the informant. Salmon also testified that the MEG director had told him about a month before trial that the informant had been in an automobile accident and was paralyzed and unable to speak. When asked why defendant had not been indicted earlier, Salmon indicated that the informant had continued his work in the Canton area. Salmon guessed that the informant stopped working in the area approximately two to four months after the middle of October 1976.

Defendant, testifying on his own behalf, denied that he sold marijuana to Salmon or the informant and stated that he had been ill and unable to work on the date of the alleged transaction. He was found guilty.

As indicated above, defendant's first contention is that the 10-month pre-indictment delay constituted a denial of due process.

In *United States v. Marion* (1971), 404 U.S. 307, 325, 30 L. Ed. 2d 468, 481, 92 S. Ct. 455, 465, the United States Supreme Court indicated that under certain circumstances pre-accusation delay resulting in actual prejudice to the defense might violate the due process clause. In *United States v. Lovasco* (1977), 431 U.S. 783, 790, 52 L. Ed. 2d 752, 759, 97 S. Ct. 2044, 2048-49, the court stated that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."

■■ Pursuant to *Marion* and *Lovasco*, in *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244, the Illinois Supreme Court outlined the procedure to be followed when the defendant claims a denial of due process because of pre-accusation delay. The defendant must come forward initially with a clear showing of actual and substantial prejudice. If he satisfies the trial court that he has been substantially prejudiced by the delay, the burden shifts to the State to show the reasonableness, if not the necessity, of the delay. If both substantial prejudice and reasonableness of the delay are shown, the court must balance the interests of the defendant and the public in making its determination.

■■ ■ Defendant contends that the unavailability of the informant to testify at trial constituted actual and substantial prejudice caused by the delay. There is no indication in the record, however, that the informant's testimony would have aided defendant. Had the informant been physically able to testify, he might have corroborated defendant's testimony, or he might have refuted it. The defendant also claims that the long delay between the alleged offense and his indictment made it difficult to remember names and locate witnesses. Defendant has made a showing of the possibility of prejudice, not actual and substantial prejudice (*People v. Chicon* (1977), 55 Ill. App. 3d 100, 104, 370 N.E.2d 605, 608.) As the supreme court stated in *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244, 1249, a showing of the possibility of prejudice is not enough, and mere assertion of inability to recall is insufficient.

■■ Defendant's reliance on *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, and *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685, is misplaced. Those cases did not address the issue of pre-indictment delay, and, therefore, the concepts of actual and substantial

prejudice were not discussed. Although those cases might have required the State to make the informant available to defendant as a witness had the informant been able to testify, they do not require reversal of defendant's conviction in the absence of a showing of actual and substantial prejudice where the unavailability of the informant was brought about, not by the refusal of the State to disclose his identity, but by a fortuitous and tragic automobile accident occurring during a pre-indictment delay.

Because defendant has not come forward with a clear showing of actual and substantial prejudice resulting from the pre-indictment delay, the trial court was correct in refusing to dismiss the indictment.

Defendant's second contention, that the trial court erred in denying his motion for a continuance, is also without merit. The sequence of events following his indictment on July 27, 1977, may be briefly summarized as follows. Counsel was appointed to represent defendant on July 28, 1977, and on August 1, 1977, a motion was filed by defendant demanding an "immediate trial by jury." On August 22, 1977, defendant filed motions for discovery and for a bill of particulars. On the following day the State filed answers to those motions and mailed them to defendant. A supplemental answer to defendant's motion for discovery was filed and mailed to defendant on August 30, 1977. Defendant received this supplemental answer on September 1, 1977.

On August 30, 1977, the court ordered the cause set for trial on September 13, 1977. Six days before trial, on September 7, 1977, defendant moved for a continuance, alleging, *inter alia*, (1) that he was not aware of the exact time the offense allegedly took place until September 1, 1977, when he received the State's supplemental answer to his motion for discovery, and that such information materially changed his defense, and (2) that he needed additional time to locate students at Western Illinois University who were his neighbors on the date of the alleged offense. Because of the long pre-indictment delay, and because of the fact that students move quite frequently, defendant said he was unable to find these potential witnesses as of the date the motion was filed. After a hearing on September 8, 1977, the court denied the motion.

Defendant argues that the continuance should have been granted for the reasons stated in the motion and also so that he could have determined whether the informant was really hospitalized and unable to speak.

The statutory requirements are:

> "(e) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e).)

Finally, the statute states the legislative intent that:

"(h) This Section *shall* be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(h).)

This legislative intent was emphasized by our supreme court in the case of *People v. Breen* (1976), 62 Ill. 2d 323, 328, 342 N.E.2d 31, 33:

"Too, the practice of unnecessarily continuing cases for long periods of time runs counter to the expeditious disposition of litigation and the clear intent manifest in section 114—4(h) of the Code of Criminal Procedure [citation] that criminal cases shall be tried with due diligence."

■■ Defendant's claim that he was not aware of the exact time the offense allegedly occurred until he received the State's supplemental answer to his discovery motion on September 1, 1977, is belied by the record. A police report containing a detailed account of the alleged offense, including the time of its occurrence, was attached to and made a part of the State's first answer to defendant's discovery motion filed on August 23, 1977. Thus, defendant was not required to change the theory of his defense on September 1, 1977, 12 days before trial.

The defendant's defense was that he was home sick on the day when the offense was alleged to have been committed, yet in his motion for a continuance nothing specific about the names of possible witnesses was mentioned, nor about the nature of their testimony should they be found. We believe it noteworthy that the defendant did have available the testimony of David Hammond, his roommate at the time of the alleged offense, but he chose not to call him as a witness.

In claiming that the trial court abused its discretion in failing to grant him additional time to locate witnesses, defendant relies on *People v. Dunham* (1929), 334 Ill. 516, 166 N.E. 97, and *People v. Bain* (1972), 4 Ill. App. 3d 442, 280 N.E.2d 776. The facts in the *Dunham* case are not comparable with the facts in the instant case for the reason that in *Dunham* the indictment was returned on November 19, 1927, defendant was furnished with a copy on November 21, 1927, and the case was set for trial on November 28, 1927. Thus in *Dunham* the defendant had only nine days to prepare for trial while here Parks had 48 days from indictment to trial. *Dunham* and *Bain* have been superseded by *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. In *King*, the case was pending only one week from arraignment and appointment of counsel to disposition. Defendant personally demanded trial as was done in the instant cause, but appointed counsel requested a continuance to locate certain witnesses. The request was denied, and the supreme court found no abuse of discretion. The court noted that the witnesses were not identified, that there was no

showing of the materiality of their testimony or of the reasonable likelihood they would be found, or that any efforts had been made to locate them. The court also relied upon the fact the defendant demanded immediate trial, and held that the denial of the continuance was not improper. The same factors are present in the case at bar where Parks has failed to name the witnesses or to show the materiality of their testimony. And here Parks has demanded a speedy trial. For a thorough and thought-provoking article, see Bonaguro, *Continuances—The Trial Judge's Authority and Responsibility*, 67 Ill. B.J. 106 (1978).

■■ It cannot be held that the denial of a motion for a continuance was an abuse of discretion unless it appears that the denial in some way embarrassed the accused in the preparation of his defense and thereby prejudiced him. (*People v. Canaday* (1971), 49 Ill. 2d 416, 427, 275 N.E.2d 356, 362-63.) A motion seeking additional time to secure witnesses is properly denied if there is no reasonable expectation that they will be available in the foreseeable future. *People v. Tyler* (1975), 28 Ill. App. 3d 538, 540, 328 N.E.2d 585, 587.

At the hearing on his motion defendant testified that he had returned many times to the trailer court where he lived at the time of the alleged offense in an attempt to locate his former neighbors. He had interviewed the owner of the trailer court and others to no avail. The only indication that defendant would have been able to find the witnesses if given more time was his assertion that he was of the opinion that he would be able to locate them. He did not indicate how he would do so.

Furthermore, the only indication that the testimony of his neighbors would have aided him was defendant's assertion that he was of the opinion that they would be able to provide him with an alibi defense.

He did not specify which neighbors would do so, nor did he describe the alibi defense with which they were going to provide him.

■■ In light of (1) the failure of defendant to specify how he would locate the witnesses whom he had unsuccessfully tried to find many times; (2) his failure to specify what witnesses would provide him with what alibi; and (3) the fact that on August 1, 1977, he demanded an "immediate trial by jury," it cannot be said that he was embarrassed in the preparation of his defense and prejudiced by the denial of his motion. See *People v. King* (1977), 66 Ill. 2d 551, 557, 363 N.E.2d 838, 840.

For the reasons stated above, the judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

ALLOY, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I must respectfully dissent from the opinion of my colleagues. I believe that the indictment should have been dismissed in that defendant's constitutional right to due process was violated by the unreasonable delay in indicting him. In the absence of such a dismissal, I also believe that denying the defendant a continuance was a clear abuse of discretion and that a new trial should have been granted.

Due process requires that governmental action be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions. As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. (*Lisenba v. California* (1941), 314 U.S. 219, 86 L. Ed. 166, 62 S. Ct. 280.) In *United States v. Marion* (1971), 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455, the Supreme Court held that due process may be denied a defendant where there is a lengthy pre-indictment delay which causes substantial prejudice to the defendant's right to a fair trial. In *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, the Illinois Supreme Court refined this statement into a three-part test for determining whether a lengthy pre-indictment delay deprived the defendant of due process. The court stated that, first the defendant must show actual and substantial prejudice. If the defendant shows that he or she has been substantially prejudiced, then the burden shifts to the State to show the reasonableness of the delay. If both substantial prejudice and reasonableness of delay are shown, then the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider include the length of the delay and the seriousness of the crime.

The majority, after stating the test set forth in *Lawson*, holds that under this test Park failed to show actual prejudice. Park claims that due to the 309-day delay between the alleged offense and the date of his indictment he was unable to remember the events of the day in question and the names and locations of witnesses in his behalf. The majority states that under *Lawson* the mere assertion of inability to recall is insufficient. I agree that mere inability to recall is insufficient. However, the present case contains significantly more than that. Not only was there a 309-day delay which dulled defendant's memory, the government's case consisted of one special agent, Salmon, who allegedly saw the defendant only once, for a short time, almost a year prior to the trial. There were discrepancies between Salmon's description of the man who sold him the marijuana and Park's appearance. Park was balding, a fact which Salmon neglected to mention in his report. Park also had a very distinctive tattoo on his right arm which allegedly was visible and which Salmon failed to mention.

Further, Salmon had felt it necessary to view a photo of the defendant shortly before trial. In other words, not only was defendant's memory dimmed by the 309-day delay, but there was considerable doubt about the identification.

In *Ross v. United States* (D.C. Cir. 1965), 349 F.2d 210, the District of Columbia court had before it an almost identical case. In the trial court, the defendant had been convicted of a narcotics violation. The alleged violation took place seven months before the arrest and the conviction was based upon the sole testimony of a Washington D.C. undercover agent investigating many individuals at the same time. The agent met the defendant on one brief occasion, did not recall the meeting and had to testify from his notes. The defendant claimed that the seven-month delay prejudiced him in that, due to the passage of time, he was unable to reconstruct the events of the day in question. Additionally, during the delay a witness died who might have been able to testify. The trial court concluded that this did not constitute prejudice in that there was no indication that the defendant would have been able to present a more adequate defense had he been arrested sooner than he was. The appellate court reversed, stating that the inability to recall did prejudice the defendant.

> "His failure of memory and his inability to reconstruct what he did not remember virtually precluded his showing in what respects his defense might have been more successful if the delay had been shorter. With time passed any opportunity appellant might have had to reconstruct the events of May 10 or to discover how he was disadvantaged thereby. In a very real sense, the extent to which he was prejudiced by the Government's delay is evidenced by the difficulty he encountered in establishing with particularity the elements of that prejudice." *Ross v. United States* (D.C. Cir. 1965), 349 F.2d 210, 215.

While *Ross* has been applied narrowly by the D.C. courts and other courts, limiting it to cases where there is a failure of memory and a weak identification, I believe that the instant case is sufficiently similar to *Ross* so that the *Ross* rationale is applicable. In the instant case, there was an even longer delay than in *Ross*, 10 months as opposed to seven months. As in *Ross*, the delay virtually precluded the defendant from showing how he was prejudiced in that his memory was dimmed and his witnesses scattered to their homes during summer vacation. And, as in *Ross*, there was a weak, uncorroborated identification. While the agent, Salmon, claimed that he remembered Park he apparently felt it necessary and desirable to view a picture of Park just prior to the trial and there were discrepancies between his testimony and his police report.

In *Woody v. United States* (D.C. Cir. 1966), 370 F.2d 214, 216-17,

Chief Judge Bazelon explained the rationale behind *Ross* and clarified the prejudice which the defendant suffered.

> "But the ultimate prejudice that has concerned us in these cases has been the risk of erroneous conviction attributable to the process which led to the verdict of guilt. Delays prior to arrest which hinder or prevent presentation of a defense shackle our system of determining truth through the adversary process. The reliability of the verdict then depends upon the quality of the police identi-fication. The more inherently unreliable the method of identi-fication, the more the ultimate prejudice—the risk of erroneous conviction. * * * There is a haunting danger that any person chosen at random from the slum area where appellant lives would have been convicted * * * had his picture been selected instead of appellant's."

Chief Judge Bazelon was concerned that, due to the delay, innocent people might be erroneously convicted. The same consideration applies in the instant case with equal force. Had a different student been selected instead of defendant, he would have been equally unable to defend himself. Over 10 months had elapsed, the other students in the com-munity were scattered and not present due to summer vacation, and certainly the events of 10 months ago would be only dimly remembered, if at all. With these factors operating to preclude an effective defense, a weak, uncorroborated identification could easily be adequate to convict an innocent person. The "haunting danger" of an erroneous conviction that worries Chief Judge Bazelon is certainly present in the instant case.

In other words, in the instant case the system has operated so as to, in effect, tie one hand behind defendant's back in his attempt to establish a defense. Then, the defendant is convicted on the basis of a weak identification which, due to the system's impairment of his ability to defend himself, the defendant is unable to refute. Such a system hardly comports with the concept of fundamental fairness so integral to due process.

The dangers inherent in a long pre-indictment delay are obvious. The delay may result in the loss of alibi witnesses, the destruction of material evidence and the blurring of memories. At least when a person is accused of a specific crime, he can devote his powers of recall to the events surrounding the alleged occurrences. When there is no formal accusation, however, the State may proceed methodically to build its case while the prospective defendant proceeds to lose his. When these dangers reach the point that the delay prevents the defendant from refuting a weak identification, the conclusion is inescapable that actual and substantial prejudice has occurred.

It must be emphasized that finding prejudice in a case of this type does not impose an intolerable burden on the State which precludes valid

convictions where there has been a long pre-indictment delay. Assuming that the government can show that the delay is reasonable, the court makes a determination based upon the balancing of the interests of the defendant and the public. Thus, the court can find that the public interest in the delay outweighed the defendant's interest in an early arrest and find there has been no denial of due process despite the prejudice to the defendant.

To get to this balancing step when there has been actual and substantial prejudice, the burden shifts to the State to show the reasonableness of the delay. In the case at hand, the State has failed to make such a showing. In his trial testimony, the special agent, Salmon, stated that Park was not indicted earlier because the informant continued to work in the Canton area after this case. However, Salmon testified that the informant had stopped working the area approximately two to four months after the alleged sale. Thus, six months of the pre-indictment delay occurred after the informant had terminated his work in the investigation. There is no doubt that a pre-indictment delay is reasonable where it is necessary to permit an ongoing undercover investigation to reach completion. (*United States v. Lovasco* (1977), 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044.) In such a situation, an early indictment could destroy an undercover informant's effectiveness and possibly endanger his safety.

However, I do not believe that a six-month delay after the informant's termination of work in the investigation is reasonable. The State presents no evidence in explanation of this six-month delay. The State claims that the investigation in the Canton area might have continued after the informant left or that the informant might have been working in the six-county area covered by the Multi-County Drug Enforcement Group and that bringing the indictment earlier might have thus jeopardized the investigation or the safety of the informant. This is sheer speculation. The State offered no evidence, and there is nothing in the record that indicates that the investigation continued during the six-month delay or that the informant would have been endangered had there been no delay.

In *United States v. Jackson* (8th Cir. 1974), 504 F.2d 337, 340-41, the court held a pre-indictment delay to be unreasonable where it extended five months beyond the time necessary to protect an ongoing investigation. The court reasoned that:

> "The interest of the defendant in preparing his defense while events are still recent and his memory still fresh must be taken seriously by the government in deciding to continue the undercover operation, and it must not be forgotten that the withholding of notice to the suspect is a conscious and deliberate

act on the part of the police. * * * Even the legitimate excuse of a continuing undercover investigation may be stretched to the breaking point; at some point, the accused's right to due process of law must prevail. * * * On balance, then, we believe that it was reasonable to delay the indictment until Crosby terminated his services, but it should have been brought promptly thereafter."

The logic in *Jackson* is clearly applicable to the instant case. Where there is a six-month delay between the end of an investigation and the indictment and absolutely no justification is proffered, such a delay acts to the defendant's detriment with no corresponding public benefit and is clearly unreasonable.

In the present case the defendant suffered actual and substantial prejudice, and the delay which caused this prejudice was unreasonable. Therefore, under the test set forth in *Lawson,* the pre-indictment delay was violative of Park's constitutional right to due process and should have been dismissed.

In addition to disagreeing with the majority as to the disposition of the indictment, I must also disagree with the majority's decision regarding the trial court's denial of defendant's motion for a continuance. The statute governing continuances (Ill. Rev. Stat. 1977, ch. 38, par. 114—4) states that the granting of a continuance is within the discretion of the trial court, which is to view the motion in light of the movant's diligence. A reviewing court will not interfere with the trial court's decision unless there has been an abuse of discretion. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914; *People v. Tyler* (1975), 28 Ill. App. 3d 538, 328 N.E.2d 585; *People v. Bain* (1972), 4 Ill. App. 3d 442, 280 N.E.2d 776.) In deciding whether or not there has been an abuse of discretion, it is necessary to look at the facts and circumstances existing at the time of the request. *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 776, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94.

In the instant case, there was a 10-month delay between the alleged transaction and the indictment. The alleged transaction took place in a college community where students move often and it is easy to lose track of them. Thus, in the present situation, the 10-month delay was particularly damaging in that possible witnesses were scattered and difficult to get in touch with. Additionally, the defendant was indicted during the summer when most college students are at home. This made the search for witnesses even more difficult. In addition, the State gave Park the wrong address of the informant with the result that all of the defendant's attempts to subpoena the informant were unsuccessful. Further, Park received the results of his first discovery motion on August 23, 1977, and then received supplemental information on September 1, 1977, only 12 days before trial.

In an oft-cited passage from *People v. Dunham* (1929), 334 Ill. 516, 521-22, 166 N.E. 97, 99, the Illinois Supreme Court stated:

> "No person accused of a serious crime should be forced to trial without a reasonable opportunity to employ counsel and properly prepare his defense. [Citation.] Upon a proper showing that for want of time counsel has not been able to properly prepare the case, * * * or that the cause is not ready for trial for want of opportunity for preparation owing to no fault of the accused, the court, in the exercise of a wise discretion, should postpone the trial to a later day in the term or continue the cause, if necessary."

I believe that, under the circumstances, there was simply not enough time for the defendant to adequately prepare. As mentioned before, witnesses were scattered and memories dimmed. There is no indication that college had commenced or that defendant could have interviewed the students after receiving the initial discovery material. Both the motion for continuance and defendant's testimony indicated that he did make an effort to locate prospective alibi witnesses during the week between his finally learning all of the specific charges against him and the date of the motion for continuance. The record hardly supports any conclusion of lack of diligence and indeed affirmatively presents circumstances both supporting and justifying the conclusion that the defendant and his counsel were acting diligently.

In addition, the State furnished Park with the wrong address of the informant, resulting in an inability to subpoena him, despite what appear to have been diligent attempts to find him. Further, the State either knew or should have known that the informant had a broken jaw and was in the hospital. The State cannot mislead the defendant, even though it may have been done negligently, and then expect to profit when, as a result, the defendant does not have enough time to track down the informant. This inability, caused by the State, to find a key witness severely hampered the defendant's attempts to prepare his defense. Thus, I believe that, under these circumstances, there was a clear abuse of discretion in denying the continuance.

The majority affirms the denial of the continuance and argues that the legislative intent is that criminal trials should be tried with due diligence. The majority then cites *People v. Breen* (1976), 62 Ill. 2d 323, 342 N.E.2d 31, as authority for their position. I am completely in accord with the statute which requires due diligence and also with the statement from *Breen* criticizing delay. However, while *Breen* might be appropriate as a general principle, its facts have nothing to do with granting or denying a first motion for continuance, but rather deal with the unreasonableness of a delay which occurs when a defendant is granted supervision. I would suggest that if the quote from *Breen,* dealing with long periods of time

running counter to the legislative intent that criminal cases be tried with due diligence, has any bearing on the instant case, it is supportive of my contention that the indictment was brought too late and should be dismissed.

The majority also states that there was no abuse of discretion in denying the continuance because the defendant failed to specify how he would locate the witnesses he was trying to find and he failed to specify what witnesses would provide him with what alibi. In effect, the court rules that because the defendant hasn't had enough time to discover the events that had occurred on the day of the alleged transaction, he will be denied more time.

My views find complete support in *People v. Bain* (1972), 4 Ill. App. 3d 442, 280 N.E.2d 776. In *Bain* the court held that there was an abuse of discretion where the motion for continuance was made on the grounds that defendant did not have adequate time to prepare a defense. A college freshman was charged with aggravated assault and moved for a continuance on the grounds that she had not been afforded ample time to prepare her defense during nonschool months and to identify and locate witnesses. The trial court denied the motion and on appeal the appellate court reversed, citing the aforementioned passage from *People v. Dunham*. I believe that the circumstances in the present situation are at least as compelling as those in *Bain,* especially since Park has a material witness whom he could not subpoena at the first trial.

The majority fails to distinguish *Bain,* simply asserting that it has been superseded by *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. A review of *King* shows that it has little relevancy to the present case and certainly does not supersede *Bain*. There are three crucial differences between *King* and the present case. First, in *King* the motion for continuance was made on the day the case was set for trial, not a week prior to the trial as in the instant case. Second, when the case was set for trial the court specifically told the defendant that if the State was present with its witnesses no continuance would be granted. No such statement was made in the present case. Third, both earlier and on the date of the trial, the defendant himself wanted the trial to proceed. In the instant case, although the defendant had, on indictment, demanded an immediate trial, on September 7 he did not wish the trial to proceed, desiring time to prepare a defense. The absence in the instant case of the facts present in *King* leads me to believe that *King* is inapposite in the instant case and certainly doesn't supersede *Bain*. Therefore, I would hold that there was an abuse of discretion by the trial court in refusing to grant the continuation.

For the foregoing reasons I believe the indictment should have been dismissed or the defendant granted a new trial.