THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FRED GULLEY, Defendant-Appellee.

Third District No. 78-341

Opinion filed May 9, 1980.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by the People of the State of Illinois in a criminal case pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)). The defendant, Fred Gulley, successfully persuaded the Circuit Court of Peoria County to dismiss two indictments charging him with unlawful delivery of heroin. In summary, the trial court dismissed the two indictments against the defendant because of a combination of pre-indictment and post-indictment, pre-arrest delay of 51 months.

The issue presented by the State on appeal is whether the trial court erred in dismissing the two indictments against the defendant. Defendant presents two additional issues in his brief, namely (1) whether he was denied his right to a speedy trial where he was substantially prejudiced by the 42-month delay between the suppressed indictments and his arrest; and (2) whether the assessment of appellate court costs against the defendant, who has not been convicted but is forced to defend against an appeal by the State, is impermissible.

In February of 1974, the Illinois Bureau of Investigation commenced an undercover narcotics operation in the Peoria area. IBI Agent Clem Ferguson and Federal Bureau of Investigation Agent Charles Walters worked as undercover agents during this operation. On February 4, 1974, IBI Agent Ferguson purchased a small quantity of heroin from one Charlie E. Mosely. FBI Agent Walters accompanied the other agent and participated in the sale but remained in the car and was not actually present at the sale itself. The defendant allegedly assisted the two agents in purchasing the heroin from Mosley and was paid $5 for his assistance. Two days later, on February 6, 1974, Agents Ferguson and Walters purchased a small quantity of heroin from another individual, one Melinda Scott, with the defendant allegedly again assisting the agents in their purchase of the contraband narcotics. Both Agents Ferguson and Walters were eyewitnesses to the February 6 transfer. Neither agent had previously known the defendant nor did either see him again thereafter. The memorandums of both agents contained conflicting descriptions of the defendant as well as name variations. In November of 1974, a Peoria

County grand jury returned two indictments against the defendant for his part in the February 4 and 6 drug sales. Prior to the convening of the grand jury, FBI Agent Walters died. IBI Agent Ferguson testified before the grand jury and implicated the defendant. At the State's request the two indictments against the defendant were suppressed and arrest warrants were issued for the defendant.

During March of 1974, the defendant left Peoria and moved to Chicago. He remained in Chicago until May of 1978 when he was arrested for a traffic violation and it was discovered that the outstanding Peoria County arrest warrants were unexecuted. Defendant Gulley testified that during his four-year residence in Chicago he was unaware of the Peoria County indictments and arrest warrants. He testified that he had moved to Chicago to look for a job and actually became employed in the construction trade. After being employed for 15 months he became unemployed and collected unemployment insurance from the State of Illinois for about a year. He stated that he had informed both his sister and the woman with whom he had been living that he was going to Chicago when he left Peoria, and had written giving them his address after he arrived in Chicago. He obtained a job at Unicount Chemical Company following his year of unemployment and was employed there until his arrest in May of 1978.

The two investigating agents, Ferguson and Walters, had listed defendant's address as 609 W. Monson in Peoria, while defendant testified that he had resided at 609 Hulburt Street in Peoria. After the arrest warrants were issued the police fed defendant's name into a computer and learned that his driver's license had a Peoria, Illinois, address. In February of 1975 the IBI interviewed the defendant's cousin, Paul Gulley, and informed him of the outstanding arrest warrants for the defendant. However, the cousin was unable to tell the police officers where the defendant had gone. Damion Runyon, the supervisor of the Peoria office of the Illinois Department of Law Enforcement, Division of Investigation, testified that his office had a heavy caseload and that therefore they were not able to interview the defendant's cousin sooner than February 1975.

This particular investigation of drug sales in Peoria identified 24 individuals including the defendant. After the investigation hit its peak, it was terminated resulting in November 19, 1974, indictments. Finally, in May of 1978, 42 months after the return of the indictments, as aforesaid, the defendant was arrested in Chicago for a traffic violation. The Chicago police discovered the outstanding Peoria County arrest warrants in checking defendant through a police computer. Defendant was then arrested pursuant to the arrest warrants and returned to Peoria.

The State asserts that the trial court erred in dismissing the two indictments against the defendant by arguing that the defendant failed to adequately show any actual prejudice from the 42-month delay or alternatively that the delay was reasonable in light of preserving the secrecy of the ongoing investigation. The State also claims the 42-month delay was necessitated by the inability of the State to find the defendant.

■■ The case of *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, sets forth the applicable test to determine if the delay in the present appeal violated defendant's due process.

"Where there has been a delay between an alleged crime and indictment or arrest or accusation, the defendant must come forward with a clear showing of actual *and* substantial prejudice. Mere assertion of inability to recall is insufficient. If the accused satisfies the trial court that he or she has been substantially prejudiced by the delay, then the burden shifts to the State to show the reasonableness, if not the necessity, of the delay.

If this two-step process ascertains both substantial prejudice and reasonableness of a delay, then the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider, among others, are the length of the delay and the seriousness of the crime." *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244, 1248.[1]

The task of judging when a delay has caused actual prejudice, or whether the delay was reasonable, or which of the competing interests outweighs the other in attempting to balance one against the other, is a difficult duty. In reviewing the action of the trial court we must carefully examine the application of each element of the *Lawson* test as the trial court did to determine whether the trial court erred in dismissing the indictments against the defendant because of the 51-month pre-indictment pre-arrest delay.

To satisfy the initial element of the *Lawson* test the defendant must come forward with a clear showing of actual and substantial prejudice resulting from the complained of delay by the State. The length of the delay here, 51 months, causes great suspicion and a presumption that the delay was prejudicial. (*People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815, *appeal denied* (1978), 71 Ill. 2d 612 (prejudice was presumed).) We agree with the trial court that the defendant satisfied the first element of the *Lawson* test.

---

[1]The Illinois Supreme Court in a supplemental opinion examined the case of *United States v. Lovasco* (1977), 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044, which was filed after the initial *Lawson* opinion and reconciled its holding in Lawson with *Lovasco*. *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244 (supplemental opinion filed October 17, 1977).

■■ Several important facts will illustrate the actual prejudice to the defendant from such a long delay as in the present case. The two deliveries of heroin were on two separate days. On one day the now-deceased FBI agent was an actual eyewitness to the entire transaction. The reports of both the FBI agent and the IBI agent show some serious discrepancies in the identification of the man alleged to be the defendant, as well as distinct differences in actually naming the defendant. Neither the IBI agent or the FBI agent knew the defendant previously, nor did either of the two see him thereafter. The indictments were suppressed, and it appears the defendant did not know about them. To perfect an alibi the defendant and his witnesses would be required to recall an uneventful two days back four years to negate the evidence presented by the State. Presuming the defendant's innocence, it would take some unusual activity on the two relevant days to call attention to them to cause them to be recalled by the defendant or any of his alibi witnesses. The death of the FBI Agent Walters further prejudiced the defendant in that Walters' inconsistent description and identification of the defendant cannot now be questioned or attacked. FBI Agent Walters' death also precludes the use of the defense of entrapment by Walters for the February 6, 1974, drug transaction charge. We believe the defendant met the test for prejudice by generally establishing several factors which impaired his ability to defend himself. Obviously he so convinced the trial court.

Having satisfied the first element of the *Lawson* test by coming forward with a clear showing of actual and substantial prejudice caused by the delay, the burden then shifts to the State to show the reasonableness, if not necessity, for the delay. This we believe the State failed to do. Therefore there is no need to consider the third element of the *Lawson* test, i.e., a balancing of competing interests. The delay in the case at bar is unduly long. The investigation of the drug traffic in the Peoria area was concluded in the very early part of the entire 51-month delay. Therefore the usual excuse given by the State for the delay, that the undercover nature of the investigation demands secrecy and the delay necessarily results, is not available to the State in this case. The State claims that a diligent search was made for the defendant but he had removed himself from the area and his absence itself caused the delay. We cannot agree with that argument. The defendant's testimony is uncontradicted and clearly establishes that he did not go into hiding to avoid apprehension. In fact, it is uncontradicted that the defendant was not even aware of the investigation, indictments, or arrest warrants until the Chicago traffic stop 51 months after the alleged crime was committed. It appears uncontradicted that the defendant left the area for the

legitimate reason of obtaining employment which he actually achieved. He forwarded his new address to his sister and to the woman with whom he had lived in Peoria. He collected unemployment compensation for about a year. All these actions are not indicative of someone in hiding seeking to avoid being located. Rather, they are indicative of lack of knowledge of the investigation and charges against him and of honest motives for moving from the Peoria area before the indictments were returned. The record is absolutely devoid of any evidence that the defendant moved to Chicago to prevent the police from arresting him.

Further, the State has failed to show that the 51-month delay was reasonable, let alone necessary. Given the modern methods of crime detection and the technologically advanced means of compiling and utilizing data relating to criminal activites, we cannot find that the State acted diligently in waiting 51 months before arresting defendant Gulley. The defendant had more than enough contacts with the State through various public administrative bodies to cause a truly diligent search for him to have been successful. In addition the State failed to follow up their local investigation search for defendant which if conducted with diligence and in a timely fashion would have led to the defendant. The burden of showing the delay to be reasonable if not necessary is a strict one. In *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815, there was a similar lengthy post-indictment delay of 33 months. We concluded in that case that delay of the State was caused by incompetence and the indictment was accordingly dismissed. Due process and the protection it affords has been held applicable to a delay after charging a defendant and prior to his arrest. (*People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 815.) It has also been applied to pre-indictment delay. *United States v. Marion* (1971), 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455.

In two recent cases pre-indictment delay only was found not to have actually and substantially caused defendants prejudice. In *People v. Park* (1980), 81 Ill. App. 3d 108, 400 N.E.2d 966, a 10-month pre-indictment delay was found not to have violated a defendant's right to due process because no showing of actual prejudice had been made. Despite a lengthy dissenting opinion, the majority in *Park* declared that only a showing of the possibility of prejudice had been made. A similar result was reached in *People v. Reddick* (1980), 80 Ill. App. 3d 335, 399 N.E.2d 997, where the court concluded that the defendant's inability to recall the events surrounding the alleged crime did not amount to the necessary showing of prejudice from a 10-month pre-indictment delay. Both *Park* and *Reddick* are factually distinguishable and involved much shorter delays than the 51 month total pre-arrest delay in the case at bar. Defendant Gulley has shown, to the satisfaction of the trial judge and to this court, sufficient

actual and substantial prejudice from the extremely lengthy delay involved in this case.

The delay in the present appeal is a combination of pre-indictment and post-indictment pre-arrest delay and as we have determined violated defendant's constitutional right to due process. The greater part of the delay in the instant appeal was post-indictment pre-arrest delay of 42 months which delay also violated defendant's right to a speedy trial consistent with our holding in *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815, which involved an identical delay of shorter duration. For the reasons we have outlined above we believe the trial court correctly applied the test set forth in *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, and that the decision to dismiss the indictments because of the prejudicial and unreasonably long delay is manifestly supported by the evidence in the record before us. The trial judge's reasoning embodied in his oral decision is indicative of his correct application of the law. He stated:

> "[I] don't feel there's any way this defendant can get a fair trial in this case because of the death of the eye witness and because of the fact the incident allegedly happened four years ago. Now, I can understand the very importance of the undercover agents keeping their cover, and if that was all we had here, witnesses were still alive, and all we had here was the nine-month delay because he didn't want to blow his cover, I wouldn't dismiss it, but because we've got three and half years trying to arrest a man, and from the best I can determine, he was not hiding out, he was working, paying social security, drawing unemployment, et cetera, I can't see how he, in any way, was hiding out. The indictments were suppressed, so he didn't know about them. I think the four-year delay would prevent him from bringing up an entrapment defense because the witness is dead, the eye witness is dead. It would also prevent him from, in any way, bringing up an alibi defense. * * *. Anybody who'd come into this court and says, 'I can remember I was with Mr. Gulley on the 4th of February, 1974,' is a liar because nobody can remember that far back unless they had their leg broken that day or something very important to call to their attention. It's just—it's just too long. It's just too long. The facts are—all kinds of different facts. If he had been hiding out, the rule of the Court might be different. As I said, if the witness, even if the witness was alive, it might be different, but I think it's just a combination of all of these. I don't feel this defendant can receive a fair trial. I think it's just too late, too long, case is too old."

Therefore, we hold the trial court did not err in dismissing the two indictments against the defendant.

Part of the problem presented by this appeal has been addressed by the legislature and will solve similar cases in the future.[2]

In his brief the defendant has raised an additional issue of the propriety of assessing appellate costs against him should the State as appellant succeed in obtaining a reversal of the trial court. In light of our decision to affirm the trial court's dismissal of the two indictments against the defendant, resolution of the additional issue is unnecessary.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

SCOTT and STENGEL, JJ., concur.

---

[2] Public Act 81-1166 amends section 114—4(e) of the Code of Criminal Procedure of 1963, effective January 1, 1980. It provides that indictments and informations filed after January 1, 1980, but not tried one year after filing may be dismissed on the court's motion, after a hearing, where the State failed to use due diligence to bring the case to trial, and the speedy-trial statute shall not abate where the State files new information or defendant is reindicted; it provides that at hearing, where the court finds lack of due diligence on the part of the State, the court cannot dismiss the cause without granting the State one more court date, which shall be not less than 14 nor more than 30 days from the date of the finding, and if the State is unprepared to proceed on that date, the court shall dismiss the indictment or information.