THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ANGELO DiBENEDETTO *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-689

Opinion filed February 9, 1981.—Rehearing denied March 9, 1981.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Richard B. Caifano, of Chicago, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Angelo DiBenedetto and George Wyma, were charged by indictment on November 3, 1978, with the thefts of property of a value over $150 committed on December 1 and 3, 1975. On January 19, 1979, defendants filed a motion to dismiss the indictment, alleging that pre-indictment delay in this case denied the defendants due process of law. On April 9, 1979, after a hearing, the trial court entered an order dismissing the indictment. The State appeals pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)). We reverse.

Investigator Thomas Petersik testified that he was employed by the Illinois Department of Law Enforcement in the Illinois Bureau of Investigation (IBI) division. He worked on a special "undercover store" project between late 1974 or early 1975 and March of 1976. Agents would purchase any stolen merchandise which would be offered to them for sale. In December of 1975, Petersik was involved in an investigation concerning the theft of rim wrenches. Targets of the investigation were Angelo DiBenedetto, George Wyma, James Young and Robert Wilbanks. Petersik testified that the dates of the offenses which were the subject of the investigation occurred on December 1 and 3, 1975. He worked on the investigation beginning December 1, 1975. The last investigative work he did on the case was an interview with James Young conducted July 12, 1976. The purpose of Petersik's interview with Young was to obtain corroborative information concerning the offenses under investigation. Petersik submitted two separate packets of reports to the Cook County State's Attorney's Office. The first packet was submitted in April of 1976 and the second packet was submitted in August of 1976.

Special Agent William Flanagan testified that he was employed by the Federal Bureau of Investigation. From December of 1974 through March of 1976, Flanagan supervised the direction of the "undercover store" project run in conjunction with the IBI. Targets of the investigation involving the December 1 and 3, 1975, thefts of rim wrenches were Angelo DiBenedetto, George Wyma, James Young and Robert Wilbanks. Flanagan testified that he interviewed Young on a continuing basis from April of 1976 through November of 1976. Young was furnishing intelligence information and cooperating in several investigations. An agreement was reached whereby Young was to testify for the government in exchange for sentencing recommendations with regard to a case pending against him charging him with possession of goods stolen from interstate shipment. Young was directed to contact the IBI and furnish them with any information he had regarding the theft of the rim wrenches. Young pleaded guilty to the charges relating to the possession of the stolen goods and testified for the government in another case arising from that same incident. Young was killed in December of 1976.

Deputy United States Attorney Gary Shapiro testified that he was employed by the Department of Justice as a member of the Chicago Strike Force. Shapiro was involved in the operation of the "undercover store" from 1974 to 1976. Targets of the investigation of the theft of rim wrenches included Angelo DiBenedetto and James Young. After that case was brought to Shapiro's attention in late 1975 or early 1976, he reviewed the evidence and determined that it was more properly a State offense and referred the case to the IBI. Young was named in a Federal indictment returned April 6, 1976, involving the possession of cigarettes stolen from interstate shipment. Young agreed to cooperate with the United States and the State of Illinois in all the investigations that emanated from the operation of the "undercover store." In May of 1976, Shapiro contacted the Cook County State's Attorney's Office and informed them that Young would cooperate. Shapiro suggested to Assistant State's Attorney Nicholas Iavarone that Young not be prosecuted in the case involving the theft of the rim wrenches, but instead be used as an "accomplice witness." In June of 1976, Iavarone advised Shapiro that they would follow his advice. Shapiro identified a plea agreement entered into between the United States government and Young on or about August 30, 1976. Young agreed to plead guilty to the indictment pending against him in Federal court, to cooperate with the United States and the State of Illinois in their investigations and to testify in both Federal and State criminal proceedings. The United States agreed to make a recommendation that any sentence imposed on him not exceed two years and not to present for indictment to a Federal grand jury two transactions, one of which involved the sale of rim wrenches on or about December 19, 1975.

Young pleaded guilty on August 30, 1976, and received a sentence of one year incarceration on one count and five years' probation on a second count. Shapiro testified that at the time Young was sentenced he was cooperating with both the Federal and State authorities.

Assistant State's Attorney Nicholas Iavarone testified that he was employed as supervisor of the Organized Crime Unit of the Cook County State's Attorney's Office from late 1975 to 1977. He was involved in the "undercover store" project. Sometime in 1975 he was told that the Federal government would be prosecuting. In April or May of 1976, Iavarone became aware of the theft of rim wrenches. Defendant DiBenedetto was one of the targets of the investigation concerning that theft. Iavarone was instructed to speak with Shapiro about giving Young immunity from prosecution. Iavarone testified that no State charges were pending against Young and he believed that all cases would be prosecuted by the Federal government. Shapiro informed Iavarone that there might be a possibility that the State of Illinois would be prosecuting the case involving possession of stolen rim wrenches. Iavarone received a full set of reports in August or September of 1976. In October of 1976, Iavarone was informed that the Federal government definitely would not be prosecuting the case. Iavarone then pursued areas of concern with the Chicago Police Department and the Illinois Department of Law Enforcement. One area involved the ownership of the wrenches. Because the wrenches were not serialized, it could not easily be proved that they were stolen. In addition, because the eavesdropping done by the Federal authorities in this case involved both audio and video tapes, research of Illinois law was required to determine what evidence the State would be allowed to introduce. Furthermore, three counties were involved and time was spent deciding which county would prosecute. It was also determined that the primary target was an individual named Ben Perry. Perry was the major "fence," and the State's Attorney's Office wanted to build a case against him. This aspect of the case was pursued through Young, because reports indicated that Young had had a number of conversations with Perry which showed that Perry was the middleman. Iavarone explored these areas until March of 1977. The case was subsequently referred to Iavarone's superiors.

Defendants presented no evidence at the hearing.

The trial court admitted into evidence a certified copy of the half sheet indicating that Robert Wilbanks pleaded guilty to the offense of manslaughter of James Young on December 8, 1976.

The trial court dismissed the indictment. The court stated that in April of 1976 the Federal authorities indicated that they would not prosecute this offense and that the State authorities had the IBI reports. The court also stated that there was "nothing to show * * * that the defendants[s] [were] not prejudiced by the delay which is attributable to

the State" and that "there is nothing to show that the delay was reasonable, that there was any necessity for the delay." The trial court stated that there was no showing that additional information was collected after early 1976. The trial court also noted that the indictment was returned only one month before the expiration of the statute of limitations.

The State contends that the trial court erred in dismissing the indictment because defendants did not show that there was actual and substantial prejudice to defendants caused by a delay between commission of the offenses and the return of the indictment. Defendants were successful in persuading the court below that they were prejudiced by the pre-indictment delay. In their motion to dismiss the indictment defendants stated that they were prejudiced because (a) their ability to recall the events in question was impaired, (b) a possible defense witness, James Young, had been killed in the period of time between the commission of the offenses and their indictment, and (c) the indictment was returned only one month before the three-year statute of limitations expired.

Due process protects an accused from oppressive and unreasonable pre-indictment delays. (*United States v. Lovasco* (1977), 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044; *United States v. Marion* (1971), 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455.) In *People v. Lawson* (1977), 67 Ill. 2d 449, 459, 367 N.E.2d 1244, the court stated the test to be applied:

> "* * * Where there has been a delay between an alleged crime and indictment or arrest or accusation, the defendant must come forward with a clear showing of actual *and* substantial prejudice. Mere assertion of inability to recall is insufficient. If the accused satisfies the trial court that he or she has been substantially prejudiced by the delay, then the burden shifts to the State to show the reasonableness, if not the necessity, of the delay.
>
> If this two-step process ascertains both substantial prejudice and reasonableness of a delay, then the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider, among others, are the length of the delay and the seriousness of the crime."

■■ Here, defendants' first allegation of prejudice was grounded on their inability to recall the events in question. However, the mere assertion of an inability to recall and resulting inability to aid in preparation of a defense is insufficient to establish actual and substantial prejudice. *People v. Lawson; People v. Park* (1980), 81 Ill. App. 3d 108, 400 N.E.2d 966; *People v. Reddick* (1980), 80 Ill. App. 3d 335, 399 N.E.2d 997; *People v. McClellan* (1979), 71 Ill. App. 3d 611, 390 N.E.2d 131; *People v. Chicon* (1977), 55 Ill. App. 3d 100, 370 N.E.2d 605; *People v. Dunn* (1977), 49 Ill. App. 3d 1002, 365 N.E.2d 164.

■■ Defendants' second allegation of prejudice was based on the fact that James Young had been killed in the period of time between the commission of the offenses and the return of the indictment. There is no indication in the record, however, that Young's testimony would have aided defendants. (See *People v. Park* (1980), 81 Ill. App. 3d 108, 400 N.E.2d 966, and *People v. Chicon* (1977), 55 Ill. App. 3d 100, 370 N.E.2d 605.) In fact, the evidence demonstrates that Young had agreed to cooperate with the State in its investigations and testify for the State at trial. Furthermore, Young's death cannot be said to have resulted in actual and substantial prejudice to defendants where it was the criminal act of a third person and not the pre-indictment delay that caused Young's unavailability.

■■ In their argument to the trial court alleging prejudice caused by pre-indictment delay, defendants also relied upon the fact that the indictment charging defendants was returned approximately one month before the expiration of the statute of limitations. " '[T]he applicable statute of limitations * * * is * * * the primary guarantee against bringing overly stale criminal charges.' " (*United States v. Marion* (1971), 404 U.S. 307, 322, 30 L. Ed. 2d 468, 92 S. Ct. 455, quoting *United States v. Ewell* (1966), 383 U.S. 116, 122, 15 L. Ed. 2d 627, 86 S. Ct. 773.) We cannot find that because the indictment was returned so close in time to the expiration of the three-year statutory limit defendants have shown themselves to have been prejudiced. Absent a clear showing by defendants of how the fact that the indictment was returned one month before the statute of limitations expired resulted in actual and substantial prejudice to defendants, we cannot find that the indictment was properly dismissed.

■■ At most, defendants demonstrated only the possibility of prejudice. The possibility of prejudice is not enough to shift the burden to the State to show the reasonableness, if not the necessity, of the delay. (*People v. Lawson.*) Because no actual and substantial prejudice was shown by defendants, the burden never shifted to the State to show that the delay was reasonable or necessary and the trial court erred in granting defendants' motion to dismiss the indictment.

The judgment of the circuit court of Cook County is reversed, the indictment reinstated and the cause remanded for further proceedings.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.