869 So.2d 1083 (2004)
Mardis CARTER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-02058-COA.
Court of Appeals of Mississippi.
April 13, 2004.
*1084 David Lydell Tisdell, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
*1085 Before McMILLIN, C.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Mardis Carter was convicted by a jury of the Circuit Court of Tunica County of sale of cocaine and sentenced to twelve years in the custody of the Mississippi Department of Corrections and five years of post-release supervision. Feeling aggrieved by this judgment, Carter appeals and asserts the following issues: (1) whether the circuit court erred in not granting him a new trial because several jurors failed to fully and properly respond to questions during voir dire, and (2) whether the evidence is insufficient to support the verdict or whether the verdict is against the overwhelming weight of the evidence.
¶ 2. Ascertaining no error, we affirm.

FACTS
¶ 3. On November 3, 2000, Noah Coffee, a narcotics officer, met with Lloyd Fleming, a confidential informant (CI), at a prebuy meeting in Tunica County, Mississippi to discuss a plan for buying illegal drugs in the Tunica area. The two men left the meeting location and cruised up and down Beeline Road where they eventually saw a blue Grand Am attempting to flag them down. A man who was riding in the Grand Am told the agents to meet him on the next street, "W" Street. When the agents arrived on "W" Street, the man exited the Grand Am and hopped into the back of the agents' vehicle. Fleming asked the man for an eight ball, a large quantity of cocaine. The man responded that he did not have one and requested the agents to take him to an apartment complex so he could fulfill their request. After arriving at the apartments, the man exited the agents' vehicle, but returned without being able to retrieve the eightball. Fleming asked the man whether he could get fifty dollars worth of cocaine, and the man affirmed that he could fulfill this request. Fleming asked the man if he had change for a hundred dollar bill, but the man stated that he did not have any change. After Fleming got change from a store, the man later handed him two rocks of crack cocaine and Fleming gave the man fifty dollars. After the man exited the agents' vehicle, the agents called the man back to the vehicle's passenger window. The man subsequently left the scene, and the agents proceeded back to the pre-buy location.
¶ 4. Several months later, members of the Tunica County Sheriff Department viewed the video that was taken of the buy and identified the man in the videotape as Mardis Carter. Carter was indicted, tried and convicted, as a subsequent offender, for sale of a controlled substance. Following the filing and denial of several post-trial motions, Carter prosecuted this appeal.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Juror Responses during Voir Dire
¶ 5. Carter first argues that the trial court erred in refusing to grant his motion for a new trial based upon the failure of several jurors to respond to a question during voir dire concerning whether they knew him or members of his family. Counsel for Carter explains in his brief that he did not discover until after the guilty verdict was entered that juror number 7, Gloria Moore, juror 8, Sandy Hilliard, and juror number 12, Derrick Crawford, knew his client although they did not raise their hands when the question was asked.
¶ 6. Carter also complains that juror number 6, Jesse Clay, had discussed the *1086 case with him but failed and refused to advise the court of this fact during voir dire when members of the venire were asked by the court if any of them had heard the case discussed or heard anything about the facts. According to Carter, juror Jesse Clay, who was serving as a constable and deputy sheriff for Tunica County, discussed the case with him while Carter was incarcerated at the Tunica County Jail. Carter argues that, because Clay failed to respond to this question, he was prejudiced in not being able to ask follow-up questions to discern whether Clay should have served as a juror.
¶ 7. Carter concludes that the trial court's refusal to grant a new trial because of the jurors' failure to properly and fully respond during voir dire to the two questions discussed in the preceding paragraphs constitutes reversible error. For the reasons discussed below, we disagree.
¶ 8. Our law is clear regarding the procedure to be followed when a juror fails to respond to questions during voir dire:
[W]here a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered.
Sewell v. State, 721 So.2d 129, 137 (¶ 43) (Miss.1998) (citing Odom v. State, 355 So.2d 1381, 1383 (Miss.1978)).
¶ 9. In his order denying Carter's motion for a new trial, the circuit judge found that:
The failure of any jurors to respond to questions on voir dire concerning their personal knowledge of the Defendant or any facts concerning the crime for which he was being tried was known to the Defendant at the time that the juror may have failed to answer the questions. The Defendant did not object to any such jurors at the time that his jury was empaneled and has waived his right to do so after learning the verdict of the jury.
¶ 10. There is ample evidence in the record to support the trial court's finding that Carter knew at the time of voir dire that the jurors, about whom he later complained, knew him even though they had not raised their hands. Therefore, we agree with the circuit judge that Carter, by not objecting before the jury was empaneled, waived his right to complain later. See McNeal v. State, 617 So.2d 999, 1003 (Miss.1993).
¶ 11. As to the extent of Carter's knowledge about the jurors who did not respond, the record reflects that, at the hearing of his motion for a new trial, he gave the following testimony:
Q. And were you sitting in the courtroom when a panel of jurors was sitting in the jury box and out in the audience?
A. Yes, sir.
Q. Okay. Did you have a list of all of those names, and did Mr. Tisdell have a list of all those names?
A. Yes, sir.

*1087 Q. Did you recognize the name of Mr. Buddy Clay?
A. Yes, sir.
Q. You, did?
A. (No audible response.)
Q. Okay. And I believe that's referred to as Juror No. 6, Mr. Jessie Clay. Did you recognize him in the jury panel?
A. Yes, sir.
Q. Okay. And you knew that you had talked to him before?
A. Yes, sir.
Q. Okay. What about Gloria Moore, Juror No. 7? After she was picked in [sic] the jury, did you recognize her that day?
A. Yes, sir.
Q. And at that time, did you know that she was dating, I believe, a relative of yours?
A. Yes, sir.
Q. You knew that at the time, didn't you?
A. Yes, sir.
Q. Now, then, Sandy Hilliard, when you were therewhen you were there sitting at the defense table with Mr. Tisdell, you knew that you had worked with her, didn't you?
A. Yes, sir.
Q. You recognized her, didn't you?
A. Yes, sir.
Q. At that time you knew you had ridden in her car, didn't you?
A. Yes, sir.
Q. Okay. What about Juror No. 12, Derrick Crawford? You knew before Mr. Tisdell selected him as a juror that you had gone somewhere with him, didn't you?
A. Yes, sir.
Q. You knew that y'all had gone over to Atlantawhether you rode together or not, you knew y'all had gone to Atlanta together to a wedding, didn't you?
A. Yes, sir.
Q. Now, who was there to represent you?
A. Mr. Tisdell.
Q. Did you ever tell Mr. Tisdell anything about those four jurors?
A. What you mean? At that moment?
Q. When you were picking your jury with Mr. Tisdell, did you ever bring those comments up to him?
A. No, sir.
Q. You didn't?
A. No, sir.
Q. But it's your testimony here that all four of these individuals when thiswhen the Court, the State, and Mr. Tisdell asked all of these questions to these jurors, you never brought it up to Mr. Tisdell, did you?
A. No, sir.
Q. But you knew those four individuals, didn't you?
A. Yes, sir.
¶ 12. It is immaterial that Carter's trial counsel may not have known what Carter knew. Carter had an obligation to assist his counsel during the course of the trial. It seems clear to us that Carter thought these jurors, because of their familiarity with him, would be sympathetic to his cause. He chose to roll the dice and only after losing did he decide to reveal what he knew all along. As we stated earlier, a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter. See McNeal v. State, 617 So.2d at 1003. Here, Carter was present, along with his counsel, during voir dire and saw and recognized all of the jurors in question, including *1088 juror Clay. Despite this fact, Carter stood mute and never told his lawyer or the court that the jurors in question had failed to respond to questions to which he knew they should have responded. Because he failed to object to the jurors before the jury was empaneled, he waived his right to complain.
¶ 13. Although we have found that Carter waived his right to complain about the composition of the jury, we want to be clear that we are not condoning the failure of the jurors to respond to the questions asked during voir dire. However, notwithstanding this failure on the part of the jurors, we, because of Carter's deliberate decision to ignore the jurors's lack of responsiveness to the questions, decline to find reversible error. We refuse to give him two bites at the apple.
¶ 14. Finally, although the point is academic, we point out that Carter is mistaken in his assertion that juror Gloria Moore did not indicate that she knew him. On the venire panel, Moore was listed as juror number 9, and her last name was spelled in the record as M-o-o-r-e; however, on the petit jury, she was listed as juror number 7 and her last name was spelled in the record as M-o-h-r. Juror number 9 on the venire panel did raise her hand when the question was asked. Her response to the question was that she lived near Carter and that she knew his family although she did not know him very well.

2. Motions for JNOV and New Trial
¶ 15. In his last assignment of error, Carter argues that there was insufficient evidence to support his guilty verdict and that the verdict is against the overwhelming weight of the evidence.

a. Sufficiency of the Evidence
¶ 16. In Jefferson v. State, 818 So.2d 1099, 1110-11 (Miss.2002), our supreme court held that the standard of review for denials of motions for a directed verdict, for a judgment notwithstanding the verdict and a request for a peremptory instruction is the same. A motion for a directed verdict, a judgment notwithstanding the verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial. Id. "Since each requires consideration of the evidence before the court when made, [an appellate court] properly reviews the ruling on the last occasion the challenge was made in the trial court." McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987)).
¶ 17. In the case sub judice, Carter was charged with the sale of a controlled substance. Both Fleming and Coffee testified that on November 3, 2000, Mardis Carter sold Fleming a substance alleged to be crack cocaine for fifty dollars. Fleming and Coffee explained that they then returned to the pre-buy meeting place where Coffee sealed and labeled the substance for chemical analysis. Coffee affirmed that he or his office maintained possession of the substance until it was submitted to the Mississippi Crime Lab.
¶ 18. Theresa Hickman, a forensic scientist with the Mississippi Crime Lab, testified that Coffee brought a substance into the lab on December 22, 2000, to be tested for the presence of a controlled substance. She explained that 0.33 grams of the substance was submitted to the lab and that she ran three tests on the substance. Based on the tests she conducted, Hickman opined that the substance was crack cocaine.
¶ 19. It is true, as Carter contends, that the State introduced a videotape which did not show the transfer of the contraband and exchange of money. However, the *1089 video camera did capture the audio portion of the transaction as well as the image of Carter when the agents called him back to the passenger window of the truck. Carter also points to what he characterizes as inconsistencies in the testimony of various witnesses produced by the State. That may be so, but the law is well settled in the jurisprudence of this state that it is the function of the jury to resolve any conflicts or inconsistencies in witnesses' testimony. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Here, the jury resolve any conflicts in favor of the verdict. We see no reason to disturb the jury's verdict.

b. New Trial
¶ 20. "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." Edwards v. State, 800 So.2d 454, 464-65(¶ 16) (Miss.2001) (citing Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999)). "This Court will accept as true the evidence which supports the verdict and gives the benefit of all favorable inferences that may be drawn from the evidence to the prosecution." Jefferson v. State, 818 So.2d 1099, 1112(34) (Miss.2002)(citing Edwards, 800 So.2d at 465(¶ 25)). The appellate court will not order a new trial "unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an `unconscionable injustice.'" McDowell v. State, 813 So.2d 694, 699-700(¶ 20) (Miss.2002).
¶ 21. Considering the evidence previously described in this opinion, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Consequently, we affirm the trial judge's denial of Carter's motion for a new trial.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS' POST-RELEASE SUPERVISION AND FINE OF $5,000 AND RESTITUTION, IF ANY, IS AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONCURRENTLY WITH THE SENTENCES IMPOSED IN CAUSE NO. 2001-00228 AND CAUSE NO. 2001-00239. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.