965 So.2d 712 (2007)
Cedric LINDSEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01337-COA.
Court of Appeals of Mississippi.
May 22, 2007.
Rehearing Denied September 25, 2007.
*714 Davey L. Tucker, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Cedric Lindsey was convicted of manslaughter. He was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Lindsey appeals and argues (1) the trial court improperly held that the Odom charge of juror misconduct was waived, (2) Lindsey was denied compulsory process, and (3) the verdict was against the overwhelming weight of the evidence. We find no error and affirm.

FACTS
¶ 2. During the early morning hours of August 18, 2001, Lindsey was a patron at Club City Lights in Jackson. While there, he was engaged in an argument with Michael Williams over the vandalism of Lindsey's car two weeks earlier. The argument ended. When the bar closed about 4:30 in the morning, Lindsey left with Orlando Robinson. Williams followed them to the parking lot, continuing the prior argument. Williams's car was parked to the right of Robinson's car. Lindsey and Williams exchanged words at the cars, and Lindsey brandished a pocketknife. There was a dispute over whether or not Williams had hit Lindsey in the head with a belt before or after the knife appeared. Lindsey then got into the passenger side of Robinson's vehicle. Robinson then became involved in a physical altercation with Williams.
¶ 3. Lindsey got out of the car to help Robinson. He left his knife in the car. About this time, between eight and ten patrons joined in the fight, with around fifty more witnessing the fight. Lindsey went back for his pocketknife. Lindsey was approached by Cedric Briggs. Some witnesses testified that Briggs was trying to break up the fight, and others testified that Briggs joined in the fight, attacking Lindsey. Daniel Buckhalter saw the knife and tried to pull Lindsey away from Briggs. When Buckhalter was unsuccessful, he began beating Lindsey from behind. Some witnesses described Lindsey as using his left arm to fend off blows from his head and using his right arm to jab the knife in front of him. Other witnesses testified that the fight was one big group of people, and it was hard to tell who was doing what to whom.
¶ 4. The fight ended with Briggs being stabbed twice in the chest. One of these blows entered his heart. Lindsey ran back in the car and locked the door. Robinson soon followed. Jaworski Minniefield punched out the passenger window and tried to pull Lindsey out of the car. After several minutes, Robinson managed to get the car out of the crowd and drove Lindsey *715 to his mother's house. Lindsey testified that he realized he had cut someone, but he did not know who and did not know how serious it was.
¶ 5. After Briggs was stabbed, he fell and died at the scene.
¶ 6. Lindsey was tried for manslaughter. He pled self-defense. After a four day trial, the jury found him guilty.

ANALYSIS
I. Did Richardson waive Lindsey's Odom challenge?
¶ 7. Lindsey first argues that the trial court erred when it refused to conduct an Odom hearing on a charge of juror misconduct. In particular, he claims a juror failed to honestly respond to questions during voir dire. The State maintains that Lindsey's mother waived his right to object to the juror.
¶ 8. Parties to jury trials have the right to examine the jury panel in order to exercise their for cause and peremptory challenges. Miss.Code Ann. § 13-5-69 (Rev.2002). A juror's failure to truthfully respond to voir dire leaves the examining attorney unable to intelligently exercise his challenges. Odom v. State, 355 So.2d 1381, 1383 (Miss.1978). Where a prospective juror fails to respond to a question during voir dire, upon motion for new trial, the trial court should determine whether the question was "(1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited." Id. If so, "the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond." Id. If prejudice is found, then the trial court shall order a new trial. Id. A trial court's judgment about whether a jury is fair and impartial will not be disturbed unless it appears clearly that it is wrong.[1]Id.
¶ 9. In Odom, venire member John B. Freshour did not answer when asked if any venire member had a relative in law enforcement. Id. at 1382. His brother was a police officer. Id. Freshour also did not answer when asked if there was any reason why any of the venire members could not be fair and impartial. Id. In fact, his brother investigated the very crime that was on trial. Id. Freshour was eventually selected to serve on the jury, which convicted Odom of burglary. Id. Trial testimony listed his brother by name as one of the investigating officers. Id. Freshour still did not come forward. Id. The Odom court reversed and remanded the case for a new trial. Id. at 1383.
¶ 10. More recently, in Carter v. State, 869 So.2d 1083, 1086 (¶ 10) (Miss.Ct. App.2004), this Court held that a defendant can waive his right to challenge such juror misconduct under Odom. In that case, after the guilty verdict came down, Carter informed his attorney for the first time that four jurors had not truthfully responded during voir dire. Id. at 1085(¶ 5). Three jurors did not admit to knowing the defendant. Id. One juror did not admit to having heard the case discussed. Id. at 1085-86(¶ 6). The trial court held a hearing on this allegation at which time it was revealed "that Carter knew at the time of voir dire that the jurors, about whom he later complained, knew him even though they did not raise *716 their hands." Id. at 1086(¶ 10). Therefore, Carter waived his right to object when he did not do so before the jury was empaneled. Id. This was because "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." Id. at 1087(¶ 12).
¶ 11. Here, venire members were asked during voir dire if they knew any of the defense witnesses in the case. In particular, defendant's mother Barbara Richardson was named. Juror Tracey D. Horton did not respond. Horton did respond to one question posed in voir dire about family members who had been arrested:
Q. . . . And let me get in the curve right here with Mr. McConnell's row. That's Ms. Horton. Yes, ma'am.
A. (By Juror Tracey D. Horton) A brother, an aunt and a husband. Could I answer privately, please?
Q. You sure can. Okay.
Later, the court called out all jurors, by name, who had indicated they wanted to respond to a question in chambers. This included Tracey Horton. Richardson was present during voir dire. She was not present for most of the actual trial, as she was the next to the last witness to testify. Horton was eventually selected as juror number 11.
¶ 12. As part of the motion for a new trial, judgment of acquittal, and judgment notwithstanding verdict, Lindsey argued:
(ix) the defendant was highly prejudiced and did not receive a fair trial by the presence of Tracey D. Horton, Juror No. 11. This juror failed to advise the Court that she had prior knowledge of the defendant's background and family and that she was a co-employee with Barbara Richardson, the mother of the defendant where she has numerous complaints and conflicts with Ms. Richardson concerning the manner in which she served as a teacher for her son, Trey Horton, Ms. Richardson's Affidavit is attached as exhibit A. . . .
In her affidavit, Barbara Richardson stated:
I noticed for the first time during the jury foreman reading of the verdict that Tracey Horton, juror no. 11[,] was an individual that was a co-employee of mine at Emmanuel Christian School. . . .
I was surprised to see Tracey Horton on the jury because she knows my family and I know her family and we had a conflict of personalities.
I served as a teacher at the Emmanuel school and I taught her son Trey Horton.
Tracey Horton did not approve of the manner in which I disciplined Trey at school and we had several confrontations concerning her complaints and my concerns.
I do no believe that Tracey Horton could serve on my son's jury as a fair and impartial juror.
I do believe that Tracey Horton unfairly prejudiced the jury to find my son guilty.
¶ 13. At the hearing on the motion, this is the only issue raised in the motion that Lindsey argued. We note that Lindsey's brief argues that "[n]o testimony was taken at that hearing from either Cedric Lindsey, Barbara Richardson or Tracey Horton concerning any knowledge or relationship that those persons might have of each other." A review of the transcript reveals that Lindsey made no request for the trial court to consider any testimony or evidence other than Richardson's affidavit. The affidavit was marked as an exhibit then Lindsey's counsel stated, "And then that's all we would have." We cannot find *717 the trial court in error for not considering testimony or evidence that was never offered by the defendant.
¶ 14. In response, the State reminded the trial court that Richardson:
sat in the courtroom for a lengthy voir dire process, and I believe the court was limiting us to 45 minutes per side at that time.
[Richardson] was in court for the voir dire, which included the court's voir dire of the jury, and Ms. Mansell for the State's voir dire of the jury, which took at least 45 minutes, and Mr. Tucker's voir dire of the jury that took probably not quite that long, but we're talking about an hour and a half period when she's in the courtroom with the juror in question.
At the point that Ms. Mansell, I think was the one that requested that the rule be invoked, the witnesses left the courtroom, and Ms. Richardson was not in the court room for the State's side of the case, but during the defendant's presentation . . . Ms. Richardson was actually called as a witness.
And on direct examination she was just a few feet away from this juror. Probably eight or ten feet away from the juror that she now remembers. She also was cross-examined.
. . . Ms. Richardson was also present in the courtroom when her son, the defendant was examined and cross-examined at length. He was on the stand for about an hour.
And then she was in the room for closing arguments. And we ran over on closing arguments. Mr Tucker ran over on his. We ran over on ours. And, of course, the jury instructions were read. So we're talking at least  we're talking that she was in the courtroom at least four hours, four hours, with this lady and it's only when the verdict comes back that she remembers, oh yeah, I remember this lady.
So just for the record Ms. Richardson wants her son to have another bite at the apple after the verdict was read. And I understand that she wants her son out of jail, but it's kind of  her credibility is kind of questionable here.
The court offered Lindsey's counsel an opportunity to respond, and he stated "[N]othing further, your honor."
¶ 15. The trial court determined that the assistant district attorney's recollection of Richardson's attendance at trial was accurate. The court held that Lindsey's challenge would have been considered if it had been brought to the court's attention during voir dire or the trial. The court concluded that Lindsey waited too long to raise Richardson's claim, and it "was waived by the fact that she waited until after the verdict, and it is too late to bring it up." The court denied Lindsey's motion.
¶ 16. The question here is whether Lindsey may rely on his mother's post-trial concern about one of the jurors, which she recognized during the trial and did not bring to the court's attention until after the trial was completed, to claim that his right to exercise peremptory challenges was impeded by Horton's failure to answer an unambiguous question. The key to this inquiry is whether that answer, which was not given, would have allowed Lindsey's counsel to make an informed decision about whether to strike juror Horton. See Odom, 355 So.2d at 1383. Hence, we must consider whether Horton's failure to answer left Lindsey's counsel "uninformed and unable to ask any follow-up questions to elicit the necessary facts to intelligently reach a decision to exercise a peremptory challenge or to challenge a juror for cause." Id. It is clear to this Court that the trial court determined that Lindsey's *718 counsel was not left uninformed. Indeed, the State argued that Richardson attended the voir dire, testified in defense of her son, and so participated in the trial that the trial court would have expected the defendant's mother to identify and bring the issue to the court's attention before the verdict was reached. Hence, the trial court determined that Lindsey had or should have had actual knowledge that the juror was untruthful, and the defendant yet remained silent. See Doss v. State, 906 So.2d 836, 840 (¶¶ 16-17) (Miss.Ct.App. 2004); Carter, 869 So.2d at 1086(¶ 10); Brooks v. State, 835 So.2d 958, 962(¶ 20) (Miss.Ct.App.2003); Bell v. State, 835 So.2d 953, 957(¶ 12) (Miss.Ct.App.2003).
¶ 17. We are of the opinion that the resolution of this matter is based on the trial court's consideration of the evidence submitted to support the motion for a new trial. The trial court clearly found Ms. Richardson's affidavit to lack credibility and there were not sufficient grounds to grant the motion. We will not substitute our judgment for that of the trial court. Indeed, we hold that the trial judge's ruling was within his discretion. We find no merit to this issue.
II. Did the judge err in excluding defense witnesses?
¶ 18. Next, Lindsey argues that the trial court erred in excluding certain defense witnesses and limiting the testimony of others. He complains that the trial court did not follow the correct procedure set forth in the Uniform Circuit and County Court Rule 9.04, and it violated his Sixth Amendment right to compulsory process. The State argues that Lindsey has shown no prejudice from these exclusions.
¶ 19. The standard of review for discovery violations is abuse of discretion. Porter v. State, 869 So.2d 414, 419(¶ 18) (Miss.Ct.App.2004). We will affirm unless "there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." Id.
[T]he prosecution must disclose to each defendant or to defendant's attorney . . . the existence of which is known or by the exercise of due diligence may become known to the prosecution. . . . Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of . . . the substance of any oral statement made by any such witness[.]
URCCC 9.04(A)(1). Reciprocal discovery rules apply to the defendant. Scott v. State, 831 So.2d 576, 578(¶ 8) (Miss.Ct.App. 2002). One of the main purposes of this rule is to prevent trial by ambush. Dotson v. State, 593 So.2d 7, 12 (Miss.1991). "When the trial court is confronted with a discovery violation, the trial court should follow the procedures set forth in Box [v. State, 437 So.2d 19, 23 (Miss.1983)]." Porter, 869 So.2d at 420(¶ 19). The Box procedure has been incorporated into the Uniform Rules of Circuit and County Court. URCCC 9.04(I); Kolberg v. State, 829 So.2d 29, 53(¶ 48) (Miss.2002); Scott, 831 So.2d at 578(¶ 9). Rule 9.04 states, in part:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or *719 mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
The court shall follow the same procedure for violation of discovery by the defense.
URCCC 9.04(I).
¶ 20. For example, in Montgomery v. State, 891 So.2d 179 (Miss.2004), the supreme court upheld the exclusion of a defense witness. In that case, the only thing provided to the State in discovery was the witness's name, address, and telephone number. Id. at 184(¶ 19). Montgomery violated discovery by not providing the substance of the witness's testimony. Id.
¶ 21. Exclusion of the defendant's evidence, however, implicates his Sixth Amendment right to compulsory process. Morris v. State, 927 So.2d 744, 747(¶ 8) (Miss.2006). The evidence cannot be excluded unless the circuit court determines that the defendant's discovery violation is "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." Taylor v. Illinois, 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Our own supreme court has cautioned that the sanction of exclusion should "be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage." Houston v. State, 531 So.2d 598, 611 (Miss.1988).
¶ 22. This Court had an opportunity to balance the competing interests of the discovery rules and the compulsory process clause in Scott v. State, 831 So.2d 576 (Miss.Ct.App.2002). Scott was charged with possession of a firearm by a felon. Id. at 576(¶ 1). His defense was that he feared for his life, because he had been shot and had received death threats. Id. at 577 (¶¶ 3-4). At trial, he attempted to produce medical records to corroborate his claim. Id. at (¶ 3). This evidence was excluded, because he had not provided this to the State in discovery. Id. The Court reasoned:
Scott's defense had always been that he carried a gun for fear of his life. Scott acknowledged that he had known about the documents for some time and could have provided them to his attorney. Introducing the evidence would have given the defense a strategic advantage. It would have been difficult for the State to pursue the authenticity of the two medical billing statements. Also it would have been impossible for the State to question the treating physicians concerning the documents.
Id. at 579(¶ 14). The Court found that Scott had committed a willful discovery violation and upheld the exclusion of evidence. Id.
¶ 23. Again, in Morris, the supreme court upheld the exclusion of defense witnesses. Morris, 927 So.2d at 747(¶ 9). Morris was convicted of simple assault on a police officer. Id. at 745(¶ 2). On the day of trial, defense counsel presented the prosecution with a list of previously undisclosed witnesses. Id. at 746(¶ 3). Two of these were eyewitnesses who would corroborate Morris's defense that he did not fire a gun, and the gun was planted on him by the police. Id. at (¶ 4). The court held that Morris's discovery violation was a willful attempt to gain a tactical advantage. *720 Id. at 747(¶ 9). Id. It found, "The only reason proffered by Morris for failure to designate these witnesses sooner was the police department's failure to find these witnesses and give the names to Morris through discovery." Id. Defense counsel waited until the weekend prior to trial to find the witnesses and waited until the morning of trial to give the list to the prosecution. Id. Therefore, despite the fact that the trial court did not implement the required URCCC 9.04 procedure, the court upheld the exclusion of evidence. Id.
¶ 24. In the case sub judice, the prosecution objected before the defendant put on his case, because the defendant had merely given the name, telephone number and addresses of its witnesses and did not provide a summary of their oral statements. These witnesses were Richardson, Robinson, Mario White, Mario Nash, and Fentress McGraw. All that the defense told the prosecution was that these witnesses would testify consistent with their preliminary hearing testimony and in Robinson's case, consistent with his police statement. The trial court limited the witnesses' testimony accordingly. The transcript of the preliminary hearing was not entered into the record. Robinson's statement was. Only Richardson and Robinson testified. White, Nash and McGraw did not. Lindsey made no offer of proof as to what these last three witnesses would have said.
¶ 25. We find that Lindsey is guilty of a willful discovery violation. He admitted to taking oral statements from these witnesses. He offered no reason whatsoever for not disclosing the statements, even though the case had been pending for approximately four years. Therefore, consistent with Taylor and Scott, we hold that the trial court did not abuse its discretion in excluding/limiting the testimony.
III. Was the verdict against the overwhelming weight of the evidence?
¶ 26. Although Lindsey styles this issue as weight only, he appears to argue both sufficiency and weight of the evidence. Therefore, out of an abundance of caution, we will address both. Lindsey claims that the verdict is against the sufficiency and the weight of the evidence.
¶ 27. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 16) (Miss.2005). Usually, if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict. Id.
¶ 28. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. at (¶ 18). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 29. Manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss.Code Ann. § 97-3-35 (Rev.2006). It was undisputed that Lindsey killed Briggs, without malice, in the heat of passion with the use of a dangerous weapon. The only contested issue was whether Lindsey acted *721 in self-defense. There was undisputed testimony that Lindsey was the only one in the fight with a dangerous weapon. All others were using their fists, and Williams was possibly using his belt. Several witnesses described Lindsey making stabbing, thrusting motions with his knife, rather than swinging motions. One witness testified that Lindsey had Briggs on the ground during the fight. Several witnesses describe Briggs's actions as trying to break up the fight and pull Lindsey away from it. There was evidence that in the middle of the fight with Briggs, Lindsey left and then returned with the knife. This was sufficient evidence for the jury to find that Lindsey was not acting in self-defense. Griffin v. State, 495 So.2d 1352, 1354 (Miss.1986) (holding defendant who left the fight, got a knife, and returned to the fight using the knife could not claim self-defense).
¶ 30. We likewise find that the verdict was not against the overwhelming weight of the evidence. The evidence which favored Lindsey's theory was that he heard Briggs call for a gun while they were fighting. However, no other witness heard this. Lindsey and one other witness describe Lindsey as the person being knocked to the ground by Briggs. Others describe the scene as one big group fight with several people fighting Lindsey at one time. However the evidence indicates that Lindsey was making stabbing motions from the beginning of the fight before he was thus attacked. Also the evidence was that at the time that Briggs was stabbed, Lindsey was off the ground and the person/people attacking him from behind had been pulled away by others. Thus, we cannot say that the verdict worked an unconscionable injustice. This issue has no merit.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] The court also noted that "no firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of prospective jurors. Therefore, each case must be decided on an ad hoc basis considering the facts then before the court." Id.