THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAY TAYLOR, Defendant-Appellant.

First District (1st Division)   No. 84—1073

Opinion filed February 10, 1986.—Rehearing denied April 4, 1986.

James J. Doherty, Public Defender, of Chicago (Richard Cunningham, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Kevin Sweeney, and C. Jeffrey Thut, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Ray Taylor, was convicted of attempted murder and sentenced to 10 years' imprisonment. On appeal, defendant contends that: (1) a 22-month pre-indictment delay denied defendant due process of law; (2) the trial court abused its discretion by excluding the testimony of a defense witness as a sanction for violation of the discovery rules; (3) a prior consistent statement of the victim was improperly admitted into evidence; (4) the prosecutor improperly impeached two of defendant's witnesses; (5) defendant was denied effective assistance of counsel; and (6) certain prosecutorial remarks during closing argument deprived defendant of a fair trial.

At trial, Jack Bridges, the victim testified that on the evening of August 6, 1981, he was standing in front of his sister's house talking with his sister and others when he saw a neighborhood youth, Derrick Travis, sitting on his car. He approached Travis and told him to get off the car. Travis swore at Bridges, Bridges slapped Travis in the face, and Travis walked away. The defendant, who had been playing basketball in a playground across the street, approached Bridges and told Bridges that he had no business slapping Travis. An argument ensued between defendant and Bridges, as well as others who had witnessed the incident. The argument broke up after about 20 minutes and Bridges took a drive in his car to cool off. Bridges returned to the scene about an hour later and was informed by his brother, Maurice Bethany, that he should move his car. Bethany told Bridges that the defendant and his companions had driven by and said they were going to damage Bridge's car. Bridges put his car in a parking lot. As he was returning to his sister's house, he saw defendant and his companions talking to his sister. Bridges called out "I'm over here. Come over here." The group of men, who were carrying sticks and pipes, began walking towards Bridges. Bridges testified that he wanted to apologize to Travis for slapping him, but before he could do so, one of the men swung at him. Bethany then swung at one of the men. Bridges then noticed that defendant had a gun and he saw him fire it at Bethany, but the bullet did not strike Bethany. The men began beating Bridges with the sticks. Bridges broke free, began to run down the street, and the group pursued him. Bridges stated that when defendant was about four feet from him, the defendant fired four shots. The last shot struck Bridges in the back. Bridges fell to the ground and tried to crawl under a car. The defendant then pointed the gun at Bridges' head and pulled the trigger, but the gun misfired. He heard the defendant say "he's dead" and then heard a car screech away. The police arrived following the shooting and Bridges told them that "Ray-Ray" had shot him. "Ray-Ray" was defendant's nickname.

Hattie and Regina Algood gave substantially the same testimony on defendant's behalf. They are sisters and had been sitting on the steps of the church across the street from where the altercation occurred. They had lived in the neighborhood for some time and knew most of the people who were on the street that night. They saw a group of men, including defendant, approach Bridges and start hitting him with sticks. They stated that Maurice Bethany, the victim's brother, had a gun and that he fired three shots into the crowd, hitting Jack Bridges with one shot. Hattie and Regina Algood further testified that defendant was a friend and that they were aware the police were

looking for defendant the day after the incident. They did not, however, go to the police with the information that Maurice Bethany had shot the victim.

The defendant was indicted on the charge of attempted murder 22 months after the incident. A pretrial motion to dismiss was filed by defendant alleging that the State's delay in charging defendant was a due process violation because it "made it impossible for the defendant to reconstruct his activities on the date in question and prepare his defense." Defense counsel failed to present any evidence in support of the motion, and the motion was denied.

After two of the State's witnesses had testified at trial, defense counsel moved to amend his list of defense witnesses to add two names. Defense counsel explained that the names were not provided prior to trial because two buildings in the neighborhood where the incident took place had burned down and he was having difficulty locating witnesses. The court denied permission for the witnesses to testify, ruling that counsel should have listed the names of the witnesses in his answer to the State's request for discovery indicating that the addresses of the witnesses were unknown. The court permitted one of the witnesses, Alfred Wormley, to testify out of the presence of the jury as an offer of proof.

I

Defendant first contends that the 22-month delay in time between the shooting incident and his indictment resulted in substantial prejudice and denied him due process of law. Defendant argues that he was prejudiced because he was unable to locate numerous potential eyewitnesses to the crime as a result of the delay. Prior to trial, defendant moved to dismiss the indictment based on the delay. The trial court denied the motion, ruling that defendant failed to present any evidence indicating that he was prejudiced.

█▌ In order to support a claim of denial of due process because of a pre-indictment delay, a defendant must come forth with a clear showing of substantial prejudice. If the court is satisfied that the defendant was prejudiced, the burden shifts to the State to show the reasonableness or necessity for the delay. (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244; *People v. Overturf* (1984), 122 Ill. App. 3d 625, 461 N.E.2d 640.) In *People v. Reddick* (1980), 80 Ill. App. 3d 335, 399 N.E.2d 997, the defendant alleged prejudice because of a delay in charging defendant which caused her to lose track of a material witness. This court held that the defendant did not show substantial prejudice where she did not identify or explain the significance of the un-

available witness at trial or on appeal.

■ Despite the requirement of a clear showing of substantial prejudice, the defendant here failed to present any evidence of actual prejudice. Defense counsel stated he was unable to locate witnesses because they had moved from burned-out buildings. Counsel did not identify the witnesses or make any showing that their testimony would be helpful to this case. Counsel did state that from a list of 20 potential witnesses, he had spoken to 10. The defendant has demonstrated only a possibility of prejudice. That is not enough to shift the burden to the State to show the reasonableness or necessity for the delay. *People v. DiBenedetto* (1981), 93 Ill. App. 3d 483, 417 N.E.2d 654.

Defendant relies on *People v. Gulley* (1980), 83 Ill. App. 3d 1066, 404 N.E.2d 1077, where this court held that a pre-indictment delay causes great suspicion and a presumption that the delay was prejudicial. In *People v. Overturf* (1984), 122 Ill. App. 3d 625, 461 N.E.2d 640, the court cautioned that the presumption created in *Gulley* does not permit a defendant to avoid the standard of actual prejudice. The court noted that "[a] careful reading of *Gulley* reveals that despite the court's reference to a presumption of prejudice ***, it was actually relying upon a well-articulated showing of actual and substantial prejudice which was amply supported by the record." *People v. Overturf* (1984), 122 Ill. App. 3d 625, 627, 461 N.E.2d 640, 641.

## II

■ Defendant next contends that the trial court abused its discretion by excluding the testimony of a defense witness as a sanction for a violation of the discovery rules. The Illinois Supreme Court rules require a defendant to respond to the State's motion for discovery by providing a list of intended witnesses within a reasonable time after the filing of the motion. (87 Ill. 2d R. 413(d)(i).) The defendant sought to add two witnesses to his answer to discovery after the trial had begun and the jury had heard the testimony of two State witnesses. Defense counsel explained he had not located the witnesses prior to trial because of burned-out buildings in the neighborhood of the shooting. The trial court denied the motion, but did hear the testimony of one of the witnesses, Alfred Wormley, as an offer of proof outside the presence of the jury. During his testimony, Wormley indicated that defense counsel had spoken with him and served him with a subpoena a week prior to trial.

When discovery rules are violated, the trial judge may exclude the evidence which the violating party wishes to introduce. (87 Ill. 2d R. 415(g)(i).) The decision of the severity of the sanction to impose on a

party who violates discovery rules rests within the sound discretion of the trial court. *People v. Osborne* (1983), 114 Ill. App. 3d 433, 451 N.E.2d 1.

■ We find unpersuasive defendant's argument that his counsel was justified in violating the discovery rules. The testimony of Wormley establishes that counsel had spoken with him, knew his identity and served him with a subpoena prior to trial. Yet counsel failed to list him as a witness. Defense counsel had the opportunity to list the names of witnesses in his answer to discovery and, if necessary, indicate that their addresses were unknown. We, therefore, believe the trial court was within its discretion in refusing to allow the additional witnesses to testify.

### III

■ Defendant further argues that the trial court improperly admitted into evidence a statement made by the victim to police shortly after he was shot identifying defendant as the one who shot him since it was a prior consistent statement which bolstered the victim's credibility. Consistent statements of testifying witnesses are generally inadmissible unless they are introduced to rebut a charge of recent fabrication or a claim that a motive to testify falsely has arisen since the prior consistent statement was made. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) The State contends that the rule against bolstering the credibility of a witness is not applicable since the statement of the victim was an excited utterance. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1.) We agree.

The victim was running from attackers at the time he was shot in the back. As the victim hit the ground, the police arrived. As he was being placed in a paddy wagon for transportation to the hospital, the victim told Officer Jon Davis that "Ray-Ray" shot him. "Ray-Ray" was the defendant's nickname. Both the victim and Officer Jon Davis testified that the victim identified defendant immediately after the shooting as the man who shot him. Under these facts, we believe the victim's statement qualifies as an excited utterance and was properly admitted as evidence by the trial court.

### IV

■ Defendant next contends that the State improperly impeached two of defendant's witnesses, Hattie and Regina Algood. Both of these witnesses testified that they saw the victim's brother, Maurice Bethany, fire three shots into the crowd during the street altercation and

that one of the shots hit Jack Bridges. They further testified that defendant had nothing in his hands when the victim was shot. Defendant objects to the State's questioning of these witnesses on cross-examination. On cross-examination, both witnesses admitted they knew that the police were looking for defendant following the incident, but they did not exculpate defendant by going to the police with the information that Maurice Bethany had shot the victim.

A witness' failure to state a particular fact under circumstances rendering it natural or probable that she would state such a fact may be shown to discredit that witness' testimony. (*People v. Green* (1983), 118 Ill. App. 3d 227, 454 N.E.2d 792.) We believe the trial court properly permitted the impeachment of these defense witnesses. Hattie and Regina Algood both testified that they knew their friend, the defendant, had been arrested for this shooting eight months before trial began in this case, and neither witness informed the police of the alleged facts which could have exonerated defendant. See *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86; *People v. Welte* (1979), 77 Ill. App. 3d 663, 396 N.E.2d 315.

## V

Defendant further contends that he was denied effective assistance of counsel. Specifically, defendant complains that defense counsel failed to impeach State witnesses with prior convictions, failed to present evidence of prejudice caused by the pre-indictment delay, violated discovery rules, and failed to object to certain testimony prejudicial to defendant.

Our supreme court has adopted the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for evaluating counsel's performance where ineffective assistance of counsel is alleged. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) The *Strickland* court held that in order to establish ineffectiveness, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Defendant must establish that there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different.

After reviewing defendant's specific complaints concerning defense counsel's performance at trial, we cannot say that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674,

692-93, 104 S. Ct. 2052, 2064.) The record as a whole reveals that defense counsel represented defendant sufficiently ably to preclude a finding of incompetency. Further, defendant's complaints are directed at questions of trial strategy, exercise of judgment and discretion. A reviewing court's examination of competence does not extend to those areas. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 211.

## VI

■ Finally, defendant contends that it was prejudicial error for the prosecutor to comment during closing argument that the motive for the shooting was gang-related and that witnesses refused to testify out of fear of retaliation. From the record, we note that there was a single reference to the word "gangs" in the prosecutor's closing argument.

It is well settled that great latitude is afforded a prosecutor during closing argument. (*People v. Adams* (1982), 111 Ill. App. 3d 658, 444 N.E.2d 534.) Even if the comments by the prosecutor in the instant case are deemed improper, the error was harmless. An error in closing argument is not reversible unless the improper comments result in substantial prejudice to the defendant. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368.) In deciding whether defendant was prejudiced, it is appropriate to assess the evidence of his guilt and to determine whether the error was a material factor in his conviction. (*People v. Graham* (1985), 132 Ill. App. 3d 673, 477 N.E.2d 1342. In this case, the State produced ample evidence of defendant's guilt, and the prosecutor's singular reference to gang activity cannot be considered to be a material factor in defendant's conviction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.