## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01236-SCT

*PRESTON OVERTON*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2013 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEY: | JEFFERY KENDRICK HARNESS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE JASON L. DAVIS |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    A jury convicted Preston Overton of possession of cocaine and possession of a firearm by a convicted felon. The day before trial, the defense disclosed its intent to call two witnesses, but the circuit judge excluded their testimony as a discovery sanction. Because the record lacks any evidence that the defense made its late disclosure to gain a tactical advantage, the circuit judge erred by excluding Overton's witnesses. So we reverse Overton's convictions and remand this case for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 12, 2012, Lieutenant George Pirkey and Deputy David Washington responded to suspected drug activity at Overton's residence. The versions of what occurred at the residence differ. According to the officers, they knocked on the door and Overton invited them inside. Overton's girlfriend, Christine Dunmore, was present. Once inside, Overton signed a consent to search the home, and the officers found cocaine, a .38 caliber handgun, and a document bearing Overton's personal information in one bedroom. The officers placed Overton under arrest, and Overton signed a written statement admitting the cocaine belonged to him.

¶3.     According to Overton, however, the officers entered his home uninvited, looking for Jeremy Page. Overton explained that Page was renting a bedroom in the home but was not home at the time. Unaware of the cocaine's presence, Overton consented to the search and, when the officers found the cocaine and handgun, he informed the officers that the bedroom belonged to Page. He also told the officers that the gun belonged to his grandmother, who had passed away in 2009, and that he was unaware that it was in the house. Finally, according to Overton, he signed the written confession only because the officers threatened to arrest Dunmore if he did not confess.

¶4.     On March 15, 2013, having heard these conflicting versions of the search and arrest, a jury convicted Overton for possession of cocaine and possession of a firearm by a

2

convicted felon. He appealed, arguing that the circuit judge had erred by excluding the testimony of two defense witnesses.[1]

¶5.     The day before trial, the defense filed a witness list, indicating its intent to call Dunmore and Eunice Cheatham. During voir dire the next morning, the State objected that it had been blindsided by these witnesses. The defense suggested that a continuance would be proper. After the judge allowed the State's investigator to interview Dunmore and Cheatham, the State asked that they be precluded from testifying, and the circuit judge agreed. The record does not reflect why these witnesses were disclosed on the eve of trial. And the circuit judge's only comment on the reason was that:

> The Court did not intend in any way to impute anything improper about counsel handling this matter, and it was a matter where the family, I think, came up with these witnesses right toward the end there, and so it's a situation like that.

¶6.     The judge did allow Overton to proffer the witnesses' testimony. Dunmore corroborated Overton's version of the search and arrest. She explained that the police had entered without knocking or invitation, that they had asked for Page, that Page had lived in the house, and that Overton had informed the police that they had found the cocaine and gun in Page's bedroom. She confirmed that the officers had threatened to arrest her if Overton would not confess. She explained that the document bearing Overton's information was found in Page's bedroom because Overton had used the room for storage before he rented

---

[1] ***Overton v. State***, No. 2013-KA-01236-COA, 2015 WL 3948461, *1 (Miss. Ct. App. June 9, 2015).

it to Page. Finally, Dunmore indicated that she first had talked to Overton's counsel the day before trial. But counsel then stated that he had interviewed her some time in February 2013.

¶7. Cheatham—Overton's aunt—stated that Overton's home previously had belonged to her mother, his grandmother. She explained that the gun belonged to her mother, and that she had put it in the bedroom before Page rented a bedroom in 2008 because her mother was suffering from Alzheimer's and she feared for her mother's safety. She confirmed that Page lived in the home and explained that, after Overton was arrested, she had found Page's belongings in the bedroom, including clothes, shoes, and identification. She stated that she first had told Overton's lawyer this information some time during the week before trial.

¶8. The Mississippi Court of Appeals concluded that "in light of his confession and the length of time that the gun had been in his home, Overton was not prejudiced by the exclusion of the two defense witnesses."[2] Overton also claimed that his counsel had provided constitutionally ineffective representation by failing to disclose the witnesses earlier. The Court of Appeals left this claim for post-conviction review.[3] Overton then petitioned this Court for certiorari, arguing that the Court of Appeals had erred by affirming the circuit judge's decision to exclude his witnesses' testimony. We agree.

## ANALYSIS

¶9. With regard to discovery sanctions, this Court has recognized that "[t]he court cannot disregard the 'fundamental character of the defendant's right to offer the testimony of

---

[2] *Id.* at *3.

[3] *Id.* at **3–4.

4

witnesses in his favor.'"[4]  "The weight of the sanction should be based on the motivation of the offending party in violating the discovery rule," and "[t]he general rule is that evidence must not be excluded."[5]  "[E]xclusion of evidence is a radical sanction that 'ought be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage.'"[6]

¶10.  "The fact that evidence was recently discovered, by itself, is insufficient proof that a discovery violation was willful and motivated by a desire to obtain a tactical advantage."[7] We have rejected "'a posture in which we assume that recently discovered evidence is part of some scheme to defraud justice and require the defendant to prove otherwise.'"[8]  In other words, the record must contain evidence that the defendant committed a discovery violation to obtain a tactical advantage before exclusion becomes the appropriate sanction.

¶11.  Here, assuming that Overton violated Uniform Rule of Circuit and County Court Practice 9.04, the circuit judge erred by employing exclusion as a sanction.  The record contains no evidence that either the defendant or defense counsel withheld the witnesses' identities to gain a tactical advantage.  Further, the circuit judge made no such finding.

---

[4] *Myers v. State*, 145 So. 3d 1143, 1149 (Miss. 2014) (quoting *Coleman v. State*, 749 So. 2d 1003, 1009–10 (Miss. 1999)).

[5] *Myers*, 145 So. 3d at 1149 (citing *Coleman*, 749 So. 2d at 1009; *Williams v. State*, 54 So. 3d 212, 213 (Miss. 2011)).

[6] *Myers*, 145 So. 3d at 1149 (quoting *Houston v. State*, 531 So. 2d 598, 612 (Miss. 1988)).

[7] *Myers*, 145 So. 3d at 1149 (citing *Williams*, 54 So. 3d at 215).

[8] *Myers*, 145 So. 3d at 1149 (quoting *Williams*, 54 So. 3d at 214).

Instead, he ruled that defense counsel had done nothing wrong, but the witnesses would be excluded because they were "material."

¶12. We are unable to agree with the dissent for two reasons. First, the trial judge never asserted that Overton or his counsel had committed any willful discovery violation. The trial judge stated that he "did not intend in any way to impute anything improper about counsel handling this matter," and that the late disclosure of the witnesses "was a matter where the family, I think, came up with these witnesses right toward the end there, and so it's a situation like that."

¶13. If, as the trial judge assumed, the family (not the defendant) "came up" with the witnesses late, no reasonable inference is to be drawn that Overton or his counsel willfully violated the discovery rules. And certainly, no evidence before us suggests that the "defendant participate[d] significantly in some deliberate, cynical scheme to gain a substantial tactical advantage.'"[9]

¶14. The dissent seizes upon the trial judge's use of the phrase "trial by ambush." But this phrase in no way suggests that Overton or his counsel willfully violated the discovery rules, or that they had prior knowledge of the witnesses' potential testimony. The phrase, standing alone, means no more than that the witnesses were produced on the eve of trial, and that the trial judge agreed with the prosecution that it would be "blindsided" if the witnesses testified. This, of course, would be true whether or not Overton or his counsel had prior knowledge of the testimony and whether or not any intentional discovery violation occurred.

---

[9] *Myers*, 145 So. 3d at 1149 (quoting *Houston*, 531 So. 2d at 612).

6

¶15.   The trial judge made clear his reason for excluding the witnesses:

> They came forward. The clerk advised that the witness list was filed about 5:00 yesterday when we had a trial going on. The State advised that they were advised this morning. These are material was [sic] witnesses. You can't do that. I gave them a chance to talk to them to see what they're going to testify to. This sounds like material witnesses, so the objection is going to be sustained.

¶16.   The judge never made any finding about Overton's intent. His decision to exclude the witnesses and to deny Overton's requested continuance was based on his finding that the witnesses were material. Our precedent clearly holds that exclusion is not an appropriate sanction absent *evidence* of an intentional violation.[10]  And nothing in the record suggests that the trial judge believed Overton or his counsel had committed a willful violation, or that he based his decision on such a finding.  But the dissent suggests otherwise, opining that the trial judge did find a willful violation and that the trial judge's finding should be affirmed under a deferential standard of review.

¶17.   Again, the trial judge never held that the witnesses were excluded because of a willful violation.  But if, as the dissent believes, he did, then we would be required to examine the record to find evidence to support that finding.  We find none, so any such finding would have been arbitrary and without support.

¶18.   The record is void of any evidence of a "deliberate, cynical scheme to gain a substantial tactical advantage" as required by our precedent,[11] so, even if the trial judge had found a deliberate violation, that finding would have been based on pure speculation.

---

[10] *Myers*, 145 So. 3d at 1149.

[11] *Id.* (quoting *Houston*, 531 So. 2d at 612).

7

Accordingly, we must reject the dissent's view that evidence of late disclosure—standing alone—would support a finding of an intentional discovery violation. But to be clear, we do not agree with the dissent that the trial judge made this arbitrary factual finding.

¶19. Reversal is required "only if [the defendant] can show that he was prejudiced or harmed by the exclusion of the evidence. This Court has found prejudice where the trial court excludes evidence that tended to support the defendant's theory of the case."[12] Recently, we found prejudice where the "case featured sharply contrasting evidence, with the credibility of each side's version of events playing a critical role in the jury's deliberations."[13]

¶20. The same is true here. This case presented a pure battle of credibility. According to the officers, Overton never mentioned Page and voluntarily admitted the cocaine belonged to him. According to Overton, he always had maintained that the drugs belonged to Page and the gun to his grandmother, and that he had no knowledge that either was in the bedroom Page rented. Further, he testified that he had confessed only due to threats from the officers. The excluded defense witnesses would have corroborated all of Overton's testimony. Because this case hinged on credibility, we find that Overton was prejudiced by the trial judge's erroneous exclusion of the witnesses' corroborative testimony.

**CONCLUSION**

---

[12] *Id.* at 1150 (citing *Jackson v. State*, 594 So. 2d 20, 25 (Miss. 1992)).

[13] *Myers*, 145 So. 3d at 1150.

¶21. Because the circuit judge erred by excluding Overton's witnesses, and because that error prejudiced his defense, we reverse the trial court's judgment and remand this case for a new trial. We also reverse the judgment of the Mississippi Court of Appeals.

¶22. **REVERSED AND REMANDED.**

**LAMAR, KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. MAXWELL, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶23. Without speculating as to the trial judge's finding that a deliberate violation occurred, I direct my fellow justices to the contents of the record before us as the source of my qualms with the majority opinion. The trial judge did not mince his words at trial, expressly finding Overton's untimely disclosure was an effort to conduct a "trial by ambush" and pronouncing the untimely disclosure as "an egregious violation." He then followed the precedent of this Court and foiled a "trial by ambush."[14] The record in this case contains (1) evidence in support of exclusion, (2) a clear appreciation by the trial judge of our law, and (3) proper application of our rules and law to the facts of this specific case. If this Court grants the trial court the deference to which it is entitled, the trial judge should be affirmed.

¶24. The majority repeatedly cites *Myers v. State*, and indeed, *Myers* correctly states the law. Presiding Justice Dickinson and I are in agreement regarding the law applicable to this case, and nothing in this dissent rejects the principles of law addressed in the majority

---

[14]*See generally Myers v. State*, 145 So. 3d 1143 (Miss. 2014); *Williams v. State*, 54 So. 3d 212 (Miss. 2011); *Morris v. State*, 927 So. 2d 744 (Miss. 2006); *Coleman v. State*, 749 So. 2d 1003 (Miss. 1999); *Skaggs v. State*, 676 So. 2d 897 (Miss. 1996).

opinion or seeks to overrule the precedent of this Court. *Myers* and a host of other cases[15] also stand for the proposition that each case is fact-specific and must be decided on its own merits. In applying that principle, this Court has found witness preclusion to be an appropriate remedy. In other factual scenarios, witness preclusion was rejected.

> In *Morris*, we affirmed a finding that a discovery violation was willful where the defendant gave the State a list of witnesses the morning that the trial began. On the other hand, in *Skaggs v. State*, we reversed where the trial court struck the testimony of a defense witness who offered additional details that were not in reciprocal discovery. . . . In this case, similarly to *Skaggs* and in contrast to *Morris*, the defense provided discovery to the State, including summaries of witness testimony. The defense attorney told the judge that Herrington later had provided him with an additional fact, which was quickly disclosed to the State, and nothing in the record indicates otherwise.

*Williams*, 54 So. 3d at 215 (citing *Morris*, 927 So. 2d at 747; *Skaggs*, 676 So. 2d at 903-04).[16]

## FACTS AND PROCEDURAL HISTORY

¶25.    At trial, Overton was represented by two attorneys—Jeffery Harness and Carmen Brooks. Harness stated he was not ready to proceed if Dunmore and Cheatham could not testify and requested he be allowed to proffer their proposed testimony, which the court allowed. Brooks argued Harness had been unable to interview Dunmore and Cheatham until

---

[15]*See supra* fn. 14. *See also **Taylor v. Illinois***, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

[16]*See also **Coleman***, 749 So. 2d at 1007. Coleman did not tell his attorney about an alibi witness until a week before trial. *Id.* at 1008. The attorney told the State about the witness and diligently searched for her, but he did not find her until the final day of trial. We affirmed the trial court's exclusion of the witness. *Id.* at 1010. The defendant misled the attorney by producing a witness at the last minute and offered no explanation to indicate that he had done so for any purpose other than to gain an unfair advantage at trial. *Id.* at 1007.

the day before trial. The court found Harness was well-prepared for the case and had

"obviously done a lot of work." The judge noted that the first he heard about counsel being

ill-prepared for trial was after the court's ruling to exclude the witnesses. The judge stated,

"You simply can't be allowed to transact matters in this way. This is a court of law, and

there's certain rules. This is such an egregious violation that the [c]ourt is going to sustain

the objection [and exclude the witnesses]." Harness disavowed Brooks's representation that

Harness first had interviewed the witnesses the day before trial. Harness told the court he had

interviewed Dunmore "prior to filing the motions on March the 4th . . . probably around

February" and Cheatham "one day last week."[17]

¶26.    The trial judge specifically inquired of the witnesses and defense counsel when these

witnesses had been discovered. Dunmore admitted Overton had been out on bond since the

first week of his arrest and that she occasionally stayed at his house. Furthermore, Dunmore

was able to see and talk to him the entire time before trial. When the trial judge sought an

explanation for the late disclosure, defense counsel and the witnesses offered contradictory

statements. Dunmore swore she first had talked to defense counsel the day before trial.

Defense counsel represented to the court that he had interviewed Dunmore a month before

trial. The other witness, Cheatham, related she first had talked to defense counsel a week

---

[17]The record reflects the defendant's motions to suppress and to quash indictment were filed on February 22 and scheduled to be heard on March 4. On March 4, the court called the motions for hearing, and Harness stated that Overton was not present. The court asked where Overton was. Harness replied that Overton had been informed about the hearing and knew to be there. The court continued the matter until a later date and ultimately conducted the hearing during a break in the trial.

before trial. Regardless, no excuse was provided to explain why no notification occurred until the morning of trial.[18]

**ANALYSIS**

¶27.    Overton's discovery transgression more resembles *Morris* and *Coleman* than *Skaggs* and *Williams*. This is *not* a case where a disclosed witness altered or supplemented proposed testimony prior to trial, warranting a sanction less severe than exclusion. Here, Overton provided no discovery to the State other than untimely filing a pleading the evening before trial, identifying two witnesses and providing a copy of Page's identification card. The pleading, served on the State the morning of trial, contained no information identifying the witnesses other than a name—no address, no phone number, no summary of proposed testimony. It was after the State had concluded voir dire and had a bench conference that the State was allowed to interview the two witnesses. Following its interview, the State objected, claiming surprise and unfair prejudice.

¶28.    While recently discovered evidence, "by itself, is insufficient proof that a discovery violation was willful and motivated by a desire to obtain a tactical advantage,"[19] neither Dunmore nor Cheatham was offering recently discovered evidence.[20] Like the defendants in

---

[18]In *Myers*, we found exclusion improper because (1) there was no evidence defense counsel was aware of the witness prior to disclosure and (2) the witness was made known to the State *before trial*. *See Myers*, 145 So. 3d at 1149-50. In short, in *Myers*, there was no evidence to support "trial by ambush."

[19]Maj. Op. ¶ 10 (quoting *Myers*, 145 So. 3d at 1149).

[20]In both versions of events, Dunmore was present when the officers arrived and was offered to dispute the State's case regarding entry into the home. Cheatham is Overton's aunt, who claimed she had hidden her mother's gun in the bedroom beside the dresser under

12

*Coleman* and *Morris*, Overton waited until the last minute to reveal two witnesses—two witnesses known of long before trial. The record contains no evidence that these witnesses were unavailable to the defendant prior to their disclosure. Defense counsel argued against excluding Dunmore based on the fact her name was in the file, so the State could have expected her to be called—ignoring Overton's duty to disclose Dunmore earlier if she was expected to testify. Cheatham likewise gave conflicting testimony. First, she testified she had given Page's identification card[21] to defense counsel "one day last week." She later stated she had given the card to Overton and Dunmore and not to defense counsel. Nevertheless, she testified she had talked to defense counsel "one day last week" and that Overton had gone with her to the lawyer's office. In denying Overton's motion for new trial, the circuit judge found no reasonable explanation for the late notice, and no objective jurist can discover a reasonable explanation in the record before us.[22]

¶29.　When initially called upon to rule on this matter, according to the record, the trial judge knew of the following: (1) Overton's unexplained failure to appear at the scheduled

---

some boxes of shoes. She was prepared to testify that she had gone to Overton's home the day he was arrested and had found Page's belongings, including his identification card, in the bedroom where the drugs and gun were found. She also claimed to have taken pictures of what she found. Yet, all that was disclosed to the State were their names and a copy of the card on the morning of trial.

[21]While Cheatham and the attorneys repeatedly referred to the card as a driver's license, it was an identification card.

[22]*See* **Coleman**, 749 So. 2d at 1009-10 ("Allowing a trial judge the discretion to exclude otherwise admissible evidence on the basis of an intentional discovery violation, even when less drastic sanctions are available, undergirds the principles of fairness in our adversarial system.").

suppression hearing days before trial, (2) the untimely disclosure of these witnesses, (3) the witnesses and attorney offering conflicting testimony regarding the day they were interviewed, and (4) Overton's failure to offer any explanation for the untimely disclosure.

¶30.    As in *Myers*,[23] the trial judge here did not explicitly state that Overton's conceded discovery violation was "willful," but his statements that the court was not going to allow a "trial by ambush"[24] and that this was such an "egregious violation" are more than sufficient to satisfy the willfulness prong. The majority posits that the trial judge's use of the phrase "trial by ambush" fails to suggest the violation was willful. Respectfully, I do not subscribe to that view. My appreciation of the word "ambush" differs not from the King's English, as found in *Webster's*. *See ambush*, *Webster's II New College Dictionary* 35 (2001) ("the act of lying in wait to attack by surprise; a surprise attack made from a hiding place").

¶31.    The majority opinion relies heavily upon the trial judge's post-trial statement (made forty-seven days after trial) that he "did not intend . . . to impute anything improper about counsel['s] handling . . . where the family, I think, came up with these witnesses right toward the end . . . ." Even if accurate, such an off-the-cuff statement does not absolve the defendant of his day-of-trial disclosure of witnesses that he and his attorneys knew about well before trial, and for which neither gave an explanation. Whether the defendant or his attorneys were prompted by his family is of inconsequential import. The judge went on to state that he

---

[23]*See Myers*, 145 So. 3d at 1147.

[24]*See, e.g., Byrom v. State*, 863 So. 2d 836, 870 (Miss. 2003) ("The days of trial by ambush are over in the Mississippi trial courts, whether it be an ambush by the prosecution or by the defendant."); *Lindsey v. State*, 965 So. 2d 712, 718 (Miss. Ct. App. 2007) ("One of the main purposes of [the rules of discovery] is to prevent trial by ambush.").

wanted to review the caselaw cited by the parties, as well as his trial notes, before ruling on the motion for a new trial. The record disputes the majority's conclusion that "no reasonable inference is to be drawn that Overton or his counsel willfully violated the discovery rules."[25] The trial judge inquired as to who knew what when. He received conflicting answers and was given no explanation for the violation. Rather than excluding the witnesses solely on materiality, the judge considered the timing of the disclosure, coupled with the circumstances surrounding it—including the responses he received during his inquiry.

**STANDARD OF REVIEW**

¶32. Preclusion of witnesses has been upheld, not only by this Court, but also by the courts of other states and by the United States Supreme Court. *See Taylor*, 484 U.S. 400 (affirming *People v. Taylor*, 491 N.E.2d 3 (Ill. App. Ct. 1986)).[26] The United States Supreme Court affirmed a trial judge's discretion to exclude untimely disclosed witnesses.

> It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. One of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed. Defendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement. The risk of a contempt violation may seem trivial to a defendant facing the threat of imprisonment for a term of years. A dishonest client can mislead an honest attorney, and there are

---

[25]*See* Maj. Op. ¶ 13.

[26]The Illinois appellate court held that "[t]he decision of the severity of the sanction to impose on a party who violates discovery rules rests within the sound discretion of the trial court" and "[w]hen discovery rules are violated, the trial judge may exclude the evidence which the violating party wishes to introduce." *People v. Taylor*, 491 N.E.2d at 7.

15

occasions when an attorney assumes that the duty of loyalty to the client outweighs elementary obligations to the court.

. . .

A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

*Taylor*, 484 U.S. at 413-15.[27]

¶33. A defendant's right to present testimony is not "unfettered," for he may not "offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Id.* at 410. "The adversary process could not function effectively without adherence to rules of procedure" governing the presentation of facts and arguments. *Id.* at 410-11. "The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Id.* at 411. Notably, "[t]he State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence." *Id.*

¶34. Unquestionably, all litigants have a right to present witnesses to advance their theory of a case, but (equally true) that right yields to "the legitimate demands of the adversarial system." *See Coleman*, 749 So. 2d at 1008. Witnesses can be excluded if a willful discovery violation is "motivated by a desire to obtain a tactical advantage." *Morris*, 927 So. 2d at 747.

---

[27]Justice John Paul Stevens authored the opinion of the Court.

Our cases require an explanation for untimely disclosures. *See Coleman*, 749 So. 2d at 1007. The record is devoid of any reason or explanation by the defendant for his violation of our rules of timely disclosure.[28] Thus, it should not be mechanically declared, without reason, that the trial judge abused his discretion in excluding these witnesses to prevent trial by ambush when no explanation was offered for the conceded violation of our rules.[29]

¶35.    Our cases mirror the declaration in *Taylor* that each case must be decided on its own merits. *See Taylor*, 484 U.S. at 402. And, just as in *Taylor*, the appropriate sanction is within the trial judge's discretion, not subject to the arbitrary impulse of an appellate court. We review such decisions for abuse of discretion only.

¶36.    Courts have defined "abuse of discretion" in myriad ways. *See Cargile-Schrage v. Schrage*, 908 So. 2d 528, 529 (Fla. Dist. Ct. App. 2005) (finding no abuse of discretion because "we cannot say that no judge in his right mind would have" ruled as the trial judge did); *accord Chase v. Austrian*, 189 F.2d 555, 557 (4th Cir. 1951); *People v. Hine*, 650 N.W. 2d 659, 664 (Mich. 2002) ("An abuse of discretion occurs when the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but the defiance of it."). While the exact words may differ, the meaning and the resultant test remain the same:

---

[28]*See Cook v. Home Depot*, 81 So. 3d 1041, 1047 (Miss. 2012) ("A rule which is not enforced is no rule at all.").

[29]Defense counsel confessed that the State would suffer from the untimely disclosure but argued that a continuance, rather than exclusion, was the proper remedy. As the violation is conceded, we need not assume that Overton violated Uniform Rule of Circuit and County Court Practice 9.04. *See* Maj. Op. ¶ 11.

Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Delno v. Market St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir. 1942).

¶37. Employing an abuse-of-discretion standard, Mississippi appellate courts "must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a definite and firm conviction that the court below committed clear error." *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1064 (Miss. 2015) (internal citations omitted). "Abuse of discretion is the most deferential standard of review appellate courts employ." *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 982 (Miss. 2014).

¶38. These principles are embodied in the definition of "abuse of discretion" for appellate courts, as found in Black's Law Dictionary: "An appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *Abuse of Discretion*, Black's Law Dictionary (10th ed. 2014).

¶39. In addition to failing to appear at his suppression hearing and filing a witness list on the evening before trial, Overton failed to provide the trial judge with any explanation for his violation of Rule 9.04.[30] With those facts, coupled with the contradictory statements made

_____

[30]Overton sought discovery on Dec. 19, 2012, precipitating a reciprocal duty to provide discovery to the State. Overton made a Rule 9.04 request for oral statements of witnesses the State intended to call. URCCC 9.04(a). This imposed a reciprocal duty on the defendant to timely disclose to the State statements of witnesses he intended to call. URCCC 9.04(c). Overton's untimely filing at 4:55 p.m. the day before trial (March 14, 2013) contained a copy of Page's identification card and only the names of Dunmore (Overton's

during the witnesses' proffered testimony, the trial judge excluded the untimely disclosed witnesses. Any number of trial judges could have ruled the same as the trial judge in this case. That being the case, can it be verily argued that no judge in his right mind would have excluded these two witnesses, or that today's trial judge's decision was grossly unsound or illegal? If the United States Supreme Court failed to find an abuse of discretion when a trial judge excluded a witness on similar facts, why should we? *See* **Taylor**, 484 U.S. at 403-05 (noting the inconsistency of defense counsel's statement and the witness's testimony about when they met and discussed the case). If we, as an appellate court, are to remain true to our caselaw and rules, this decision by a trial judge—who received no reasonable explanation from the defendant—should be affirmed, for as in **Taylor**, no other inference could be drawn.[31]

**CONCLUSION**

¶40.    Justice must be fairly and evenly administered and requires we render impartial decisions. We are presented with an agreed-upon violation of our rules of disclosure. The only issue is whether the sanction given comports with existing law. It makes no difference that the nine of us may disagree about what any one of us would have done had we been the

---

girlfriend) and Cheatham (Overton's aunt)—no phone numbers, no addresses, no other identifying or locating information. The disclosure is devoid of any summary of their proposed testimony. When the filing was made, the State was involved in a separate trial and did not learn of the filing until the morning of trial (March 15, 2013), during voir dire.

[31]*See **id.** * at 417 ("In view of the fact that petitioner's counsel had actually interviewed Wormley during the week before the trial began and the further fact that he amended his Answer to Discovery on the first day of trial without identifying Wormley while he did identify two actual eyewitnesses whom he did not place on the stand, *the inference that he was deliberately seeking a tactical advantage is inescapable.*") (emphasis added).

19

trial judge in this case. We are not trial-court judges. We are an appellate court—a court of error-correction. To warrant reversal, there must be an *error*, not a mere disagreement.[32] Today's decision disregards that distinction.

¶41. Uniform Rule of Circuit and County Court Practice 9.04 commits sanctions for witness-discovery violations to the discretion of the trial judge, who had to make a decision hinging largely on credibility.[33] In arguing for a new trial, defense counsel "[did] not object to the [c]ourt's handling of Rule 9.04," but argued the court failed to find the violation was "willful and motivated by a desire to obtain a tactical advantage." I would find the trial judge did not abuse his discretion in excluding the two witnesses, as the record contains more than sufficient evidence for the trial court to conclude the admitted violation of our rules—for which the defendant offered no explanation—was willful and motivated by a desire to obtain a tactical advantage.

**WALLER, C.J., JOINS THIS OPINION.**

---

[32]*See* **Rayner v. Barbour**, 47 So. 3d 128, 134-35 (Miss. 2010) (Randolph, J., concurring in result only) ("Although I disagree with the decision of the Board . . . one issue becomes abundantly clear (beyond all dispute), that being that the decision of the Board was 'fairly debatable,' which is 'the antithesis of arbitrary and capricious.'"). *But cf.* Maj. Op. ¶ 18 (disagreeing with this opinion that the trial court found a deliberate discovery violation and labeling any such finding as "arbitrary").

[33]"Evaluations based on demeanor and credibility lie "peculiarly within a trial judge's province." **Hartfield v. State**, 161 So. 3d 125, 139 (Miss. 2015); **Booker v. State**, 5 So. 3d 356, 358 (Miss. 2008). *See also* **Rochell v. State**, 748 So. 2d 103, 110 (Miss.1999) ("The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demeanor. . . . He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.").